IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 1 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| KRISTA SALDANA, INDIVIDUALLY § <br> AND AS REPRESENTATIVE OF § <br> THE ESTATE OF DAVID SALDANA § <br> AND AS NEXT FRIEND OF JAGGER § <br> SALDANA § <br> PLAINTIFFS § <br> § <br> § <br> § <br> ITT INDUSTRIES, INC., SIKORSKY § <br> AIRCRAFT CORPORATION, A § <br> SUBSIDIARY OF UNITED § <br> TECHNOLOGIES CORPORATION, § <br> THE ESTATE OF LT. COL. MARC § <br> LEE HOHLE AND THE ESTATE OF § <br> CAPTAIN MATTHEW BRENT THOMAS § <br> § <br> DEFENDANTS § | CIVIL ACTION NO. B-00-176 |

## PLAINTIFFS' INITIAL DESIGNATION OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME, Plaintiffs by and through their attorneys of record, and respectfully file these their supplemental designation of experts as follows:

Edward Monhollen & Associates
Consultants in Aviation Safety
13438 Bandera Road
Suite 105A
Helotes, Texas  78023
(210) 695-5810
(210) 695-5811  Fax

Is expected to testify regarding aircraft safety and accident reconstruction. Attached to this designation is Mr. Monhollen's expert report, resume and list of previous testimony.

## CROSS-DESIGNATION OF EXPERTS

Plaintiffs hereby cross-designate and state that they may call any expert identified or designated by an adverse party or an employee or representative of an adverse party to elicit expert opinions subject to any objections Plaintiffs make concerning the designation of experts.

## DESIGNATION OF MEDICAL DOCTORS & NURSES

In addition to the above designations, Plaintiffs refer you to the medical records and nurses notes, from which the identities of medical doctors and nurses may be determined. Plaintiffs hereby designate such doctors, nurses and caregivers as experts who may be called to testify as expert witnesses at the time of trial to prove up the reasonableness and medical necessity of Plaintiffs' expenses.

Respectfully submitted on this the ____1____ day of April, 2002.

WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255   Fax

_____
RAY R. MARCHAN
For the Firm

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___1___ day of April, 2002, a true and correct copy of the foregoing instrument was delivered to opposing counsel by hand-delivery, via fax or by certified mail, return receipt requested.

_____
RAY R. MARCHAN



# Edward Monhollen & Associates
### Consultants in Aviation Safety

## REPORT OF FINDINGS AND OPINIONS
### Krista Saldana, et al. vs. ITT Industries, et al.
### CH-53E Helicopter Accident of 19 April 1999
### BUNO 162007

A. **GENERAL**: The following report is submitted in compliance with Rule 26 (a) (2) (A)- (B) of the Federal Rules of Civil Procedure pertaining to the expert testimony the author expects to present in the above stated case.

B. **BACKGROUND**: I have been retained by the firm of Watts & Heard, L L P to review the facts and circumstances surrounding the above stated accident and to provide my opinions as to the cause(s) of the accident.

C. **WITNESS QUALIFICATIONS**: My resume is attached as enclosure 1.

D. **COMPENSATION**: My hourly fee is $125.00. Additionally, I charge $1,200 00 per day for deposition and trial testimony.

E. **PREVIOUS TESTIMONY**: A list of my case involvement for the past 4 years is attached as enclosure 2

F. **DATA CONSIDERED**: I have reviewed the relevant portions of the documents listed at enclosure 3 in forming my opinions.

G. **SUMMARY OF ACCIDENT**: The mishap flight was to be a low light level (LLL), night vision goggle (NVG) training flight using approved NVG routes and training areas within the vicinity of Okinawa. The forecast weather for the mission was 1000 feet overcast and 3 miles visibility with light rain in the vicinity. The flight was properly briefed and proceeded without incident until their planned landing at Fire Base Jones. Neither aircrew could identify the intended landing area, so the flight continued as planned with Tiger 03 still leading the section. A lead change was scheduled at Fire Base Jones while on the ground, but since the section did not land, Tiger 03 was still in the lead as the flight turned south over water and paralleled the coast of Okinawa. Deteriorating weather to south necessitated a return by the northern route, so the aircrews coordinated the 180 degree turn with a lead change. Tiger 07, the mishap aircraft, was to begin his turn followed by Tiger 03, who would then join on Tiger 07 to complete the lead change  Tiger 07 was observed to begin his turn to the left, toward the open sea, and as he passed through the six o'clock position of Tiger 03, he began his turn to the left. The aircrew of Tiger 03 then

Report, Edward Monhollen                 2

observed a bright flash of light as Tiger 07 impacted the water. All four crewmembers were fatally injured on impact and the aircraft destroyed

## H. SUMMARY OF EXPECTED TESTIMONY:

1. Opinion: That the turn to the left toward the open sea and away from the cultural lighting greatly increased the difficulty of the maneuver, but should have been within LtCol Hohle's capabilities.

   Bases: While Captain Thomas was participating in his first LLL mission, LtCol Hohle had accumulated over 300 hours of NVG flight with 79 hours being in LLL conditions. He was also a designated Night Systems Instructor and apparently comfortable with the conditions that night, since he had raised no concerns with the exception of the southern route weather. An argument can be made that LtCol Hohle was distracted, having now to assume the section navigational duties, but I believe this to be unlikely, as well. Finding of fact #99 in the JAGMAN report places Tiger 03 at 500 feet and 100 knots prior to the lead change. Major Paul, on page 48 of his deposition stated that only 12 seconds elapsed from the start of Tiger 07's turn until impact. That translates to an average rate of descent of 2,500 feet per minute; hardly the "gradual loss of altitude" referred to in LtCol Samples deposition as being difficult to perceive with NVG's. This rate of descent would require a substantial reduction in collective pitch to achieve; it would not go unnoticed by the other crewmembers.

2. Opinion: That the "Low" warning light on the radar altimeter is inadequate to alert NVG pilots to the fact that they are descending below their selected altitude. The manufacturer should have incorporated an aural warning at the same time NVG cockpit compatible lighting was installed.

   Bases: LtCol Samples, the Staff Judge Advocate Investigating Officer, and the author of the JAGMAN report, expresses this same opinion on page 23 of his report and again in his deposition. It has been my experience that the most frequently stated cause for NVG accidents has been "Controlled flight into terrain or water". I'm certain that this will be borne out by statistics gathered from the military data bases; a topic addressed in the paragraphs to follow. Regardless, a manufacturer has the responsibility to warn operators of their products when a situation exists that could result in damage to the aircraft or injury to crew and/or passengers. In this case, Sikorsky Aircraft was certainly aware the NVG were in use in the H-53E helicopters; NVG cockpit compatible lighting bares that out. Further, Sikorsky has access to the same databases that we do, if fact, they participate in the on-site accident investigations. They must be cognizant of the fact that even with radar altimeters installed, controlled flight into terrain or water continues as a major causal factor in NVG related accidents. It doesn't seem a giant step to conclude that the current warning system is inadequate in preventing such occurrences.

Report, Edward Monhollen                3

I. **DISCUSSION:** My investigation is incomplete and has been hampered by unreasonable response times to Freedom of Information Act (FOIA) requests and the lack of sufficient time to coordinate an examination of the aircraft wreckage. Both of these problems have impacted my investigation and could affect my opinions regarding the cause of this accident.

1. **FOIA Response Times:** On 4 February 2002, my office submitted an FOIA request to the U.S. Navy Safety Center for the releasable portions of the Mishap Investigation Report (MIR). We have yet to receive the report and subsequent inquiries have generated the response that they are running approximately one year behind in responding to FOIA requests at the Navy Safety Center. This report is significant in that it normally is much more detailed in damage description and contains more photographic evidence, especially with respect to the aircraft's major components, than the separately written JAGMAN report. The absence of this report becomes more significant when the aircraft wreckage is not reasonably available for examination, particularly with respect to known mechanical deficiencies that have caused previous aircraft accidents (see paragraph I.2, below). Another outstanding FOIA request has prevented me from confirming known NVG related cause factors pertinent to this case.

2. **Wreckage Examination:** I have yet to examine the wreckage of this aircraft. This has recently taken on added significance both because I have not seen the MIR and I have become aware of a mechanical deficiency that has resulted in 3 other H-53E accidents. The deficiency involves the duplex bearing assembly in the helicopter's swashplate. This bearing has failed at least 3 times in the past and went completely unnoticed in one accident by both government and Sikorsky investigators until 1 year after the fatal crash of a CH-53E at the Sikorsky plant in May 96. The latest of these failures occurred off the coast of Corpus Christi, TX in August 00. The damage description in the JAGMAN report, including photographs, with respect to the main rotor system and swashplate assembly, is insufficient to allow me to rule out duplex bearing failure as a cause of this accident. In fact, some consistencies with respect to rates of descent and impact angle tend to strengthen my suspicions.

Until I can conclusively rule out duplex bearing failure as causative in this accident, I can offer no further opinions in this accident. However, in the course of ongoing discovery in this matter, should additional substantive information be gained, the above conclusions or their bases may be supplemented, amended, or abandoned depending on the nature of the discovery.


J. **EXHIBITS:** I expect to use the following exhibits at trial:

1. Various photos and diagrams.
2. Aircraft models and/or computer simulations.

Apr 01 02 02:53p        Edward Monhollen         210-695-5811         p.5
Case 1:00-cv-00176   Document 39   Filed in TXSD on 04/01/2002   Page 7 of 14

Report, Edward Monhollen                    4

April 1, 2002
Respectfully submitted,

*[signature]*

EDWARD MONHOLLEN & ASSOCIATES
Edward Monhollen
President

Enclosures



# Edward Monhollen & Associates
### Consultants in Aviation Safety

## EDWARD L. MONHOLLEN
## AIRCRAFT ACCIDENT RECONTRUCTION

Mr. Monhollen is an aircraft accident reconstruction expert and president of Edward Monhollen & Associates (EMA), an aviation safety consulting firm. EMA is a multi-faceted company that provides a wide range of services to legal firms, insurance companies, government agencies, manufacturers, and trade organizations. These services include accident reconstruction, 3D animation, trial exhibit construction, and audio/visual services. EMA capabilities are supplemented by other respected facilities that provide technical support in disciplines such as metallurgical, materials, and mechanical engineering services. Projects ranging from the simplest aviation accident to complex investigations involving commercial airliners or hundreds of accidents with similar causes are undertaken.

Mr. Monhollen was a Senior Airworthiness Engineer with Sikorsky Aircraft Division of United Technologies Corporation for 5 years before founding EMA in 1993. His primary duties involved the worldwide investigation of accidents involving Sikorsky helicopters, participation in the Products Safety Board, management of in-house engineering investigations, and safety audits of Sikorsky facilities. These experiences provided Mr. Monhollen a broad understanding of the aircraft manufacturing process, an understanding of the responsibilities of a government contractor, and an in-depth knowledge of Sikorsky Helicopters. He was involved with investigations of electromagnetic interference (EMI) affects on aircraft systems, transmissions and drive components, composite materials, engines, component non-volatile memory, and cockpit voice recorder and flight data recorder analysis. Each major investigation entailed a review of the operators' maintenance forms, records, and procedures, aircrew training, standardization, crew selection, and qualification. Mr. Monhollen also participated in aircraft accident investigations involving products manufactured by Pratt & Whitney and Hamilton Standard, both divisions on United Technologies Corporation

Mr. Monhollen has over 30 years experience in aviation safety, beginning with his designation as a Army Aviator in 1968. His military career spanned 20 years, culminating with his retirement as a Major in 1987. He is a highly decorated veteran of Vietnam having flown over 900 hours of combat time in helicopters. His combat tour

**13438 Bandera Rd, Suite 105A • Helotes, TX 78023 (210) 695 - 5810 Fax: (210) 695 - 5811**

*www.emasafety.com*

was cut short when he was involved in the crash of a UH-1B helicopter gunship. He spent one year recovering from the injuries sustained in the crash. This was followed by his assignment as an instructor pilot at the Army's Primary Helicopter School, attendance at the Army Safety Officer's Course, completion of his Bachelor of Science degree, and ultimately his assignment as a Board President, investigating accidents for the Department of the Army. Upon his retirement, he held the following ratings: Commercial, Multi-engine, Airplane, Instrument and Commercial, Rotorcraft, CFII with over 3000 hours of total flight time.

Mr. Monhollen has investigated over 500 aviation accidents and has qualified in court as an expert in aircraft accident reconstruction and aviation maintenance management. He has investigated accidents ranging from the R-22 to the MD-82 and, most recently, the A-300. His participation as a reconstruction expert for the government in a recent case was instrumental in their winning a settlement of over 60 million dollars. He continues to carry an average of 12 to 17 cases at any given time.

March 2002

# EDWARD L. MONHOLLEN

**Areas of Expertise:**

Aircraft accident reconstruction, fixed and rotary wing.
Aircraft fire and explosion investigation.
Aircraft handling qualities.
Night vision flight techniques.
Aircraft maintenance management.
Human factors investigation.
Risk assessment and management.
Turbine engine investigation.
Cockpit resource management.

**Education:**

International Center for Safety Education, 1990
    Aircraft fire and explosion investigation
Sikorsky Aircraft / Flight Safety International, 1988
    Pilot Familiarization, S-76B, UH-60A/L, CH-53E, SH-60B
Transportation Safety Institute, 1984
    Rotorcraft Safety and Investigation
Transportation Safety Institute, 1983
    FAA Basic and Advanced Accident Investigation
Embry-Riddle Aeronautical University, 1975
    Bachelor of Science, Professional Aeronautics / Aviation Safety Management
University of Southern California, 1971
    U.S. Army Safety Officer's Course, Aircraft and Vehicle Accident Investigation Certificate.

**Positions Held:**

Edward Monhollen & Associates, San Antonio, Texas
    President and Accident Recontructionist, 1993 – Present

Sikorsky Aircraft Division, Stratford, Connecticut
    Senior Airworthiness Engineer, 1987 – 1993

U.S. Army, Fort Rucker, Alabama
    Major, Master Army Aviator, Accident Investigator, 1967 –1987

**Professional Affiliations:**

    International Society of Air Safety Investigators
        Member Number – M03023
    Transportation Safety Institute
        Former Associate Staff
    Army Aviation Association of America
        Former Alamo Chapter President
    Vietnam Helicopter Pilots Association
        Member

**Flight Experience:**

    Helicopter and Airplane Multi-engine Land, Instrument, Instructor
    Total time 3000+ hours.

| | |
|---|---|
| AS 350 D | T-41 |
| AH-1 | T-42 |
| B 204 / 205 | B-200/300 |
| B 206 | Schweizer 269 / 300 |
| CH-47D | MD-500 |
| CH-53E | UH-60 A/L |
| SH-60B | S-76 A/B |

**Awards and Decorations:**

    Meritorious Service Medal (1 Oak Leak Cluster)
    Air Medal with "V" device for Valor (16 Oak Leaf Clusters)
    Vietnam Service Medal with 3 Bronze Stars
    Republic of Vietnam Cross of Gallantry with Palm
    Master Army Aviator Badge

**Major Investigations:**

    Case Involvement available on request.

                                                            March 2002

Case 1:00-cv-00176   Document 39   Filed in TXSD on 04/01/2002   Page 12 of 14

# Case Involvement

**Edward Monhollen**
1993 - Present

| | |
|---|---|
| 1993 | Carberry, et al. v. Aerospatiale Helicopter Corporation<br>U. S. District Court, Washington.    AS –350D, Defense, |
| 1993 | Eagle Air v Aerospatiale Helicopter Corporation.<br>U. S. District Court, Washington. AS-350D, Defense |
| 1993 | House v. United Technologies Corporation<br>U. S. District Court of Southern California. SH-60B, Defense.<br>Gray, Cary, Frye, & Friedenrich.. |
| 1994 | Slaven, et al. v. United Technologies Corporation<br>U. S. District Court, Arizona. UH-60A. Defense.<br>Gust, Rosenfeld, & Henderson. |
| 1996 | Cary, et al. v. Sikorsky Aircraft Division.(UTC)<br>U. S. District Court, Kentucky. S-76A, Defense,<br>Neal & Harwell. |
| 1996 | Moore v. Bell Helicopter Company<br>U. S. District Court, Louisana.. B-206B. Plaintiff.<br>Lambert & Nelson. |
| 1996 | Tower v. The United States<br>U. S. District Court of Southern California. SH-60B. Defense.<br>USDOJ, Robert A.K. Doehl. |
| 1996 | Johnson, et al. v. Bell Helicopter Company.<br>U. S. District Court, Louisana.. B-206A. Plaintiff.<br>Lambert & Nelson. |
| 1996 | Federico v. The United States<br>U. S. District Court of Southern California. Champion 7EC. Defense.<br>USDOJ, Mr. Robert A.K. Doehl |
| 1996 | California Helicopter v. The City of San Antonio.<br>U. S. District Court of Southern Texas. S-58. Defense |
| 1996 | Through Transport v. Boeing<br>U. S District Court of Maryland. CH-47D. Defense.<br>Gardere & Wynne. |

| | |
|---|---|
| 1997 | Rollins v. The United States, et. al.<br>U. S. District Court of Texas, Eastern District. Defense<br>USDOJ |
| 1997 | Rudd v The United States<br>U. S. District Court of Alabama, Northern District. Defense<br>USDOJ |
| 1997 | Deloach v The United States<br>U. S. District Court of Georgia. UH-60A. Defense.<br>USDOJ |
| 1997 | Burnett v. Marathon Oil Company<br>U.S. District Court of Louisiana. B-206B. Plaintiff.<br>Lambert & Nelson |
| 1999 | Moss v. Bell Helicopter Textron et al.<br>District Court of Galveston County Texas. B-206B. Plaintiff.<br>Provost & Umphrey. |
| 1999 | Scott v. Altair, et al.<br>District Court of Tarrant County Texas. PA 28-235. Plaintiff.<br>Slack & Davis. |
| 1999 | Tiller v. Piper et al.<br>District Court of Jefferson County Texas. PA60-602P. Plaintiff.<br>Slack & Davis. |
| 2000 | USA ex rel. Brett Roby v. The Boeing Company.<br>Southern District Court of Ohio. CH-47D (7 Accidents). Plaintiff.<br>USDOJ. Frauds Division. Mr. Dennis Phillips |
| 2000 | Mclerran v. American Airlines.<br>Circuit Court of Pulaski County Arkansas. MD-82. Plaintiff.<br>Slack & Davis. |
| 2001 | William T. Miles, Jr. v. The United States of America. Beechcraft Queen Air. Defendant.. US District Court for the Southern District of Florida.<br>USDOJ. Mr. Justin Chretien |
| 2002 | USA ex rel. Daniel Jordan v Northrop Grumman Corporation.<br>United States District Court, Central District of California. BQM-74E Target Drone. Plaintiff.<br>USDOJ. Frauds Division. Mr. Dennis Phillips. |

Apr 01 02 02:55p   Edward Monhollen   210-695-5811   p.12
Case 1:00-cv-00176   Document 39   Filed in TXSD on 04/01/2002   Page 14 of 14

## DATA CONSIDERED

1. JAGMAN Report, dated 16 Jun 99, of Aircraft Mishap, BUNO 162007, occurring on 19 Apr 99.
2. Deposition of Major Matthew J. Paul.
3. Deposition of LtCol David Samples.
4. Deposition of Mr. Glen L. Nowak