47

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 1 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| KRISTA SALDANA, INDIVIDUALLY | ß | |
| AND AS REPRESENTATIVE OF | ß | |
| THE ESTATE OF DAVID SALDANA | ß | |
| AND AS NEXT FRIEND OF JAGGER | ß | |
| SALDANA | ß | |
|     PLAINTIFFS | ß | |
| | ß | |
| v. | ß | |
| | ß | |
| MELQUIDES SALDANA and | ß | |
| AURELIA SALDANA | ß | |
| | ß | |
| vs. | ß | CIVIL ACTION NO.: B-00-176 |
| | ß | |
| ITT INDUSTRIES, INC., SIKORSKY | ß | |
| AIRCRAFT CORPORATION, A | ß | |
| SUBSIDIARY OF UNITED | ß | |
| TECHNOLOGIES CORPORATION, | ß | |
| THE ESTATE OF LT. COL. MARC | ß | |
| LEE HOHLE AND THE ESTATE OF | ß | |
| CAPTAIN MATTHEW BRENT THOMAS | ß | |
| | ß | |
|     DEFENDANTS | ß | |

## MOTION TO ENTER PARTIES' AGREEMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **Krista Saldana, Individually and as Representative of the Estate of David Saldana and as Next Friend of Jagger Saldana, Plaintiff, Melquiades Saldana and Aurelia Saldana, Intervenors, ITT Industries, Sikorsky Aircraft Corporation, a Subsidiary of United Technologies Corporation, the Estate of Lt. Col. Marc Lee Hohle and the Estate of Captain Matthew Brent Thomas,** and file this their motion requesting the court accept the parties agreements resolving pending matters before the court and in support thereof would respectfully show the court as follows:

## I.

Last Thursday, June 27, 2002, plaintiffs and intervenors received Defendant's Sikorsky Aircraft Corporation's Motion to Exclude Plaintiff's and Intervener's Expert Witness Edward L. Monhollen, Jr. and Brief in Support.    After discussing such matter with defendant Sikorsky Aircraft Corporation, a subsidiary of United Technologies Corporation, plaintiffs agreed to voluntarily withdraw the designation of Edward L. Monhollen, Jr. so long as Plaintiffs would have until September 1, 2002, to designate experts only as regards the liability of Sikorsky Aircraft Corporation, a subsidiary of United Technologies Corporation, in this action.  Additionally, defendant Sikorsky Aircraft Corporation would produce Chris Lowenstein for his deposition by October 1, 2002, to be attended by Plaintiffs' Counsel, as well as, plaintiffs newly designated expert so long as such expert would not be disqualified.  The deposition will be taken in Connecticut or at any other mutually agreeable location.   Thereafter, on November 1, 2002, plaintiffs' and intervenors' response to defendant Sikorsky Aircraft Corporation, a Subsidiary of United Technologies Corporation's dispositive motions will be filed.  Additionally, defendant Sikorsky Aircraft Corporation, a Subsidiary of United Technologies Corporation will be allowed to file any reply to plaintiffs' and intervenors' response by December 1, 2002.

Parties request that their agreement be honored by this court and that the court grant permission to work with the court's clerk in entering an appropriate scheduling order modifying the dates applicable to this case.

## II.

### Plaintiffs' Position

Prior into entering into this agreement, it was plaintiffs' and intervenors' intent to file a motion to compel the deposition of Chris Lowenstein.  Mr. Lowenstein was the on

site investigator for Sikorsky Aircraft Corporation, a Subsidiary of United Technologies Corporation, for this incident. In order to properly respond to defendant's Sikorsky Aircraft Corporation's dispositive motions, Plaintiff needed to provide his expert with the sworn testimony of Mr. Lowenstein.

<div align="center">

**IV.**

</div>

Plaintiffs have requested the deposition of defendant's expert Chris Lowenstein both verbally and in writing. Initially, plaintiffs noticed the deposition of Mr. Lowenstein for June 14, 2002. See Exhibit "A" attached hereto and made a part hereof. Immediately upon receipt of plaintiffs' deposition notice, defendant's counsel responded that they would "check with Mr. Lowenstein to determine his availability." See Exhibit "B" attached hereto and made a part hereof. Counsel for defendant advised plaintiffs' counsel via a letter dated May 29, 2002, that they were not available on June 14, 2002, but they were available on June 18 to June 21, 2002. See attached Exhibit "C". Plaintiffs' counsel and defendants' counsel agreed via a telephone conversation that the deposition of Chris Lowenstein would take place on June 21, 2002 at defendant's counsel's s office. As such, plaintiffs noticed the deposition of Chris Lowenstein for June 21, 2002, see attached Exhibit "D." Plaintiffs' counsel advised defendant's counsel via a letter dated June 17, 2002, that Plaintiffs' expert witness, Mr. Edward Monhollen, would be present for the taking of Chris Lowenstein's deposition. See attached Exhibit "E." On June 18, 2002, for the very first time, defendant's counsel advised plaintiffs that they would seek disqualification of plaintiffs' expert and would also seek disqualification of trial counsel unless Mr. Monhollen would not be used as an expert in this case. See attached Exhibit "F."

Such late objection is frivolous and merely an attempt to cripple plaintiffs' ability to gather evidence in order to properly respond to Defendant's Motion for Summary

Judgment now pending before this Honorable Court. Defendant's counsel knew that the deposition of Mr. Lowenstein was needed in order to adequately respond to their motion and it has left plaintiffs' counsel no choice but to go before this Honorable to seek an extension of time to file a response to their summary judgment until such time that defendant's produce Chris Lowenstein.

As further evidence herein, Plaintiffs herein are attaching proof that Plaintiffs designated their experts and filed their expert reports on April 1, 2002, at which time Edward Monhollen was designated and his expert report was attached to the said designated. See attached exhibit "G." Defendants knew of Mr. Monhollen's designation since April 1, 2002, yet did not file any objections to this designation.

## V.

### Defendant Sikorsky Aircraft Corporation's Position

Defendant Sikorsky Aircraft Corporation's state their position in their recently filed Motion to Exclude the Plaintiff's and Intervenor's Expert Witness Edward L. Monhollen, Jr.

Such motion was discussed between the parties and an agreement was reached withdrawing Mr. Mohollen as Plaintiffs and Intervenors expert and that no order excluding him would either be necessitated or entered. See attached exhibit "H."

WHEREFORE, PREMISES CONSIDERED, the parties pray that the court accept their agreement and amend the scheduling order and for such and further relief at law or in equity, to which they may show themselves to be justly entitled to receive.

Respectfully submitted this the _____ / _____ day of July, 2002.

WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 fax

_____
Ray R. Marchan
State Bar No. 12969050
Federal I.D. No. 9522
Attorney for Plaintiffs

LAW OFFICES OF JOE VALLE
1120 East 10th Street
Brownsville, Texas  78520
(956) 546-2629
(956) 542-4084

_____
JOE VALLE
State Bar No. 20435450
Federal I.D. No. 11422
Attorney for Intervenors

JACKSON WALKER, L.L.P.
901 Main Street, Ste 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822  fax

_____
Robert F. Ruckman
State Bar No. 17367000
Federal I.D. No. 12018

## CERTIFICATE OF SERVICE

On this the ____/____ day of July, 2002, a true and correct copy of the foregoing

instrument was forwarded to all counsel of record, via fax, by hand-delivery, or by

certified mail, return receipt requested.

RAY R. MARCHAN

## AFFIDAVIT OF AUTHENTICITY

STATE OF TEXAS        )
                                )
COUNTY OF CAMERON )

BEFORE ME, the undersigned Notary Public, on this day personally appeared RAY R. MARCHAN, known to me, and first being by me duly sworn according to law upon his oath deposed and stated as follows:

"My name is RAY R. MARCHAN, I am a licensed attorney engaged in the general practice of law in Brownsville, Cameron County, Texas.  I am attorney with Watts & Heard, L.L.P., 1926 E. Elizabeth, Brownsville, Texas.  The law firm of Watts & Heard, L.L.P., has been retained by Plaintiffs in connection with the above-referenced lawsuit.

I am of sound mind, capable of making this affidavit, and I have personal knowledge of each and every statement stated below.

I hereby certify that the copies attached hereto as exhibits "A" to "H" are authentic true and correct copies of the originals."

Further affiant sayeth not.

RAY R. MARCHAN

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said RAY R. MARCHAN, on the _____ day of Julye, 2002, to certify which witness my hand and seal of office.

NOTARY PUBLIC, STATE OF TEXAS



Leticia Fierros Garza
Notary Public
State of Texas
My Commission Expires
July 26, 2004

# WATTS & HEARD LLP

*Attorneys at Law*

Ray R. Marchan
Attorney at Law

Telephone: (956) 546-0333
Facsimile: (956) 541-0255

May 16, 2002

via fax

Mr. Robert F. Ruckman
Jackson Walker, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Re:    Civil Action No. B-00-176
       Krista Saldana, et al vs. ITT Industries, et al

Dear Mr. Ruckman:

Enclosed please find Plaintiffs' Notices of Deposition of Chris Lowenstein and the company representative for Sikorsky Aircraft. I have noticed them for June 14, 2002 at 10:00 a.m. and 2:00 p.m., respectively. Please let me know if this date does not work for you. Otherwise, I will see you on June 14, 2002.

Should you have any questions, please do not hesitate to call me.

Yours truly,

WATTS & HEARD, LLP

Ray R. Marchan

Ray R. Marchan

RRM;lety
Encs.
cc:    Mr. Ron A. Sprague
       Gendry & Sprague, P. C.
       645 Lockhill Selma
       San Antonio, Texas 78216-5057

       Ms. Nancy Masso
       Assistant U. S. Attorney
       U. S. Federal Courthouse
       600 East Harrison # 201

Houston • Corpus ~~~~~ sville • McAllen
1926 East Elizabeth Street • B~~~~~ rrmarchan@watts-heard.com

Brownsville, Texas 78520

Page 2
Mr. R Robert F. Ruckman
May 16, 2002

Mr. Joe Valle
Attorney at Law
1120 East Tenth Street
Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KRISTA SALDANA, INDIVIDUALLY | ß | |
| AND AS REPRESENTATIVE OF | ß | |
| THE ESTATE OF DAVID SALDANA | ß | |
| AND AS NEXT FRIEND OF JAGGER | ß | |
| SALDANA | ß | |
| PLAINTIFFS | ß | |
| | ß | |
| | ß | CIVIL ACTION NO..: B-00-176 |
| | ß | |
| ITT INDUSTRIES, INC., SIKORSKY | ß | |
| AIRCRAFT CORPORATION, A | ß | |
| SUBSIDIARY OF UNITED | ß | |
| TECHNOLOGIES CORPORATION, | ß | |
| THE ESTATE OF LT. COL. MARC | ß | |
| LEE HOHLE AND THE ESTATE OF | ß | |
| CAPTAIN MATTHEW BRENT THOMAS | ß | |
| | ß | |
| DEFENDANTS | ß | |

## NOTICE OF INTENTION TO TAKE VIDEO DEPOSITION

TO:   Sikorsky Aircraft Corporation, by and through their counsel of record, Mr.
Robert F. Ruckman, at Jackson Walker, L.L.P., 901 Main Street, Ste 6000, Dallas,
Texas 75202.

ITT Industries, Inc., defendant, by and through its attorney of record, Mr. Ron A.
Sprague, at Gendry & Sprague, P.C., 645 Lockhill Selma, San Antonio, Texas
78216

PLEASE TAKE NOTICE that, under Federal R.Civ.P. 30, Claimants Krista

Saldana, Individually and As Representative of the Estate of David Saldana and as Next

Friend of Jagger Saldana will take the oral deposition of Chris Lowenstein on June 14,

2002, at 10:00 o'clock a.m. Jackson Walker, L.L.P., 901 Main Street, Suite 6000, Dallas,

Texas 75202, before Esquire Depositions Services. The deposition will continue from

day to day until completed.

The deposition will be taken before a court reporter appointed or designated

under Fed.R.Civ.P. 28. All parties are invited to attend and cross-examine.

In addition to the stenographic recording of the deposition, Plaintiffs intend to video tape the deposition.

Respectfully submitted this the ___/6___ day of May, 2002.

WATTS & HEARD, L.L.P
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 FAX


_____
RAY R. MARCHAN
State Bar No. 12969050
Federal I.D. No. 9522

## CERTIFICATE OF SERVICE

On this the ___/6___ day of May, 2002, a true and correct copy of the foregoing instrument was forwarded to all parties via fax, by hand-delivery or by certified mail, return receipt requested.


_____
RAY R. MARCHAN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KRISTA SALDANA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF | § | |
| THE ESTATE OF DAVID SALDANA | § | |
| AND AS NEXT FRIEND OF JAGGER | § | |
| SALDANA | § | |
| **PLAINTIFFS** | § | |
| | § | |
| | § | CIVIL ACTION NO..: B-00-176 |
| | § | |
| ITT INDUSTRIES, INC., SIKORSKY | § | |
| AIRCRAFT CORPORATION, A | § | |
| SUBSIDIARY OF UNITED | § | |
| TECHNOLOGIES CORPORATION, | § | |
| THE ESTATE OF LT. COL. MARC | § | |
| LEE HOHLE AND THE ESTATE OF | § | |
| CAPTAIN MATTHEW BRENT THOMAS | § | |
| | § | |
| **DEFENDANTS** | § | |

## NOTICE OF INTENTION TO TAKE VIDEO DEPOSITION

TO:    Sikorsky Aircraft Corporation, by and through their counsel of record, Mr.
Robert F. Ruckman, at Jackson Walker, L.L.P., 901 Main Street, Ste 6000, Dallas,
Texas 75202.

ITT Industries, Inc., defendant, by and through its attorney of record, Mr. Ron A.
Sprague, at Gendry & Sprague, P.C., 645 Lockhill Selma, San Antonio, Texas
78216

PLEASE TAKE NOTICE that, under Federal R.Civ.P. 30, Claimants Krista

Saldana, Individually and As Representative of the Estate of David Saldana and as Next

Friend of Jagger Saldana will take the oral deposition of the **Company Representative**

**for Sikorsky Aircraft Corporation who is most familiar with the CH-53 Sea Stallion**

**Helicopter involved in this incident** will be taken on June 14, 2002, at 2:00 o'clock p.m.

Jackson Walker, L.L.P., 901 Main Street, Suite 6000, Dallas, Texas 75202, before Esquire

Depositions Services. The deposition will continue from day to day until completed.

The deposition will be taken before a court reporter appointed or designated under Fed.R.Civ.P. 28. All parties are invited to attend and cross-examine.

In addition to the stenographic recording of the deposition, Plaintiffs intend to video tape the deposition.

Respectfully submitted this the ___16___ day of May, 2002.

WATTS & HEARD, L.L.P
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 FAX

_____
RAY R. MARCHAN
State Bar No. 12969050
Federal I.D. No. 9522

## CERTIFICATE OF SERVICE

On this the ___16___ day of May, 2002, a true and correct copy of the foregoing instrument was forwarded to all parties via fax, by hand-delivery or by certified mail, return receipt requested.

_____
RAY R. MARCHAN

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:      5/16/02

| TO: | Mr. Robert F. Ruckman | FAX#: | (214) 953-5822 |
| TO: | Mr. Ron A. Sprague | FAX#: | (210) 349-2760 |
| TO: | Ms. Nancy Masso | FAX #: | 548-2549 |
| TO: | Mr. Joe Valle | FAX #: | 542-4084 |

FROM:    Ray R. Marchan

RE:       Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE):  7

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              0395
CONNECTION TEL        #207239#12149535822#
SUBADDRESS
CONNECTION ID         JACKSON WALKER
ST. TIME              05/16 16:57
USAGE T               02'21
PGS.                      7
RESULT                OK
```

#7239

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege.  The information is intended only for the use of the individual or entity named below.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:     5/16/02

TO:       Mr. Robert F. Ruckman     FAX#:  (214) 953-5822
TO:       Mr. Ron A. Sprague        FAX#:  (210) 349-2760
TO:       Ms. Nancy Masso           FAX #:  548-2549
TO:       Mr. Joe Valle             FAX #:  542-4084

FROM:     Ray R. Marchan

RE:       Saldana vs. ITT, et al

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0396 |
| CONNECTION TEL | #207239#12103492760# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 05/16 16:59 |
| USAGE T | 02'08 |
| PGS. | 7 |
| RESULT | OK |

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE: 5/16/02

| | | | |
|---|---|---|---|
| TO: | Mr. Robert F. Ruckman | FAX#: | (214) 953-5822 |
| TO: | Mr. Ron A. Sprague | FAX#: | (210) 349-2760 |
| TO: | Ms. Nancy Masso | FAX #: | 548-2549 |
| TO: | Mr. Joe Valle | FAX #: | 542-4084 |

FROM: Ray R. Marchan

RE: Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE): 7

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO            0398
CONNECTION TEL        220#207239#5482549#
SUBADDRESS
CONNECTION ID
ST. TIME           05/16 17:05
USAGE T            02'51
PGS.                  7
RESULT             OK
```

*7239*

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:    5/16/02

TO:    Mr. Robert F. Ruckman      FAX#: (214) 953-5822
TO:    Mr. Ron A. Sprague         FAX#: (210) 349-2760
TO:    Ms. Nancy Masso            FAX #:  548-2549
TO:    Mr. Joe Valle              FAX #:  542-4084

FROM:   Ray R. Marchan

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0397
CONNECTION TEL        220#207239#5424084#
SUBADDRESS
CONNECTION ID
ST. TIME              05/16 17:02
USAGE T               02'28
PGS.                  7
RESULT               OK
```

If there are any problems, please call (956) 544-0500 and ask for Letty.

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

COMMENTS:

NUMBER OF PAGES (INCLUDING COVER PAGE):  7

RE:        Saldana vs. ITT, et al

FROM:      Ray R. Marchan

TO:    Mr. Joe Valle              FAX #:  542-4084
TO:    Ms. Nancy Masso            FAX #:  548-2546
TO:    Mr. Ron A. Sprague         FAX#:  (210) 349-2760
TO:    Mr. Robert F. Ruckman      FAX#:  (214) 953-5822

DATE:      5/16/02



**ATTORNEYS & COUNSELORS**
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

## JACKSON WALKER L.L.P.

S. Brad Brown
(214) 953-5819
bbrown@jw.com

May 17, 2002

***VIA FACSIMILE TO: 956-541-0255***
Ray R. Marchan
WATTS & HEARD, P.C.
1926 E. Elizabeth
Brownsville, Texas  78520

Re:   Civil Action No. B-00-176; *Krista Saldana, et al. v. ITT Industries, Inc., et al.*

Dear Ray:

We are in receipt of Plaintiff's Notices of Deposition for Chris Lowenstein and a Sikorsky corporate representative scheduled for June 14, 2002. We will check with Mr. Lowenstein to determine his availability.

As I previously advised, Bob Ruckman and I begin a 2 – 3 week trial on June 3. Therefore, if we are in trial, we will not be able to produce these witnesses on June 14.

Very truly yours,

S. Brad Brown

cc:   ***VIA FACSIMILE***
Ron A. Sprague
GENDRY & SPRAGUE, P.C.
645 Lockhill Selma
San Antonio, TX 78216-5057

***VIA FACSIMILE***
Joe Valle
Attorney at Law
1120 East Tenth Street
Brownsville, Texas  78520

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™





**ATTORNEYS & COUNSELORS**

901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

JACKSON WALKER L.L.P.

# FACSIMILE

| DATE: | May 17, 2002 | TOTAL PAGE COUNT: | |
|---|---|---|---|
| FROM: | S. Brad Brown | DIRECT DIAL NUMBER: | (214) 953-5819 |

| NAME | COMPANY NAME | FACSIMILE NUMBER | PHONE NUMBER |
|---|---|---|---|
| Ray R. Marchan | Watts & Heard, P.C. | (956) 541-0255 | (956) 546-0333 |
| Ron A. Sprague | Gendry & Sprague, P.C. | (210) 349-2760 | (210) 349-0511 |
| Joe Valle | | (956) 542-4084 | (956) 546-2629 |

**PLEASE CALL (214) 953-6000
IF YOU DO NOT RECEIVE ALL PAGES.**

This facsimile is intended only for the use of the addressee. If the addressee of this facsimile is a client or agent for one of our clients, you are further advised that the facsimile contains legally privileged and confidential information which we intended to send to the addressee only.

| FOR INTERNAL USE ONLY: |
|---|

In any event, if you are not the intended recipient of the facsimile, you are hereby notified that you have received this facsimile inadvertently and in error. Any review, dissemination, distribution or copying of this is strictly prohibited. If you have received this in error, please immediately notify us by telephone and return the original facsimile to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the facsimile to us.

| CLIENT/MATTER NO.: | 003642.00283 |
|---|---|
| TIMEKEEPER: | SBB2 |

MESSAGE:

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™



ATTORNEYS & COUNSELORS
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

JACKSON WALKER L.L.P.

Robert H Ruckman
(214) 953-6024
rruckman@jw.com

May 29, 2002

**VIA FACSIMILE**
Ray R. Marchan
WATTS & HEARD, P.C.
1926 E. Elizabeth
Brownsville, Texas 78520

Re:    Civil Action No. B-00-176; *Krista Saldana, et al. v. ITT Industries, Inc., et al.*, in the United States District Court, Southern District of Texas, Brownsville Division

Dear Ray:

I tried to call you today to discuss your letter of May 16th and enclosed deposition notices for the deposition of Chris Lowenstein and a company representative for Sikorsky Aircraft. Basically, we need to discuss the date, the witnesses and the location for the depositions.

In addition to specifically asking for Chris Lowenstein, you have requested that Sikorsky designate the person "who is most familiar with the CH-53 Sea Stallion Helicopter involved in this incident." I am not sure whether you are asking for someone who is most familiar with the Sea Stallion helicopter in general or the person most familiar with the specific helicopter involved in the accident. If it is the former, then we may need to get you to break it down into specific categories since no one person would be the most knowledgeable about everything about the CH-53 helicopter. If it turns out that you are talking about the specific helicopter involved in the accident, then Chris Lowenstein may be the most knowledgeable person at Sikorsky about that helicopter since he investigated the accident for Sikorsky.

If we are able to respond to your deposition notices with one witness, we are agreeable to bringing that witness to our offices in Dallas for the deposition. If however, we need to designate multiple witnesses to respond to the corporate deposition notice, then we will want the depositions to take place in Stratford, Connecticut, where Sikorsky is located.

Finally, we do have a conflict on Friday, June 14th. However, we are available on June 18th-21st if one of those dates fits with your schedule.

I look forward to hearing from you.

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™



Ray R. Marchan
May 29, 2002
Page 2

Very truly yours,

Robert F. Ruckman

RFR/kjw
Enclosure

cc:   **VIA FACSIMILE**
      Ron A. Sprague
      **GENDRY & SPRAGUE, P.C.**
      645 Lockhill Selma
      San Antonio, TX 78216-5057

      **VIA FACSIMILE**
      Joe Valle
      Attorney at Law
      1120 East Tenth Street
      Brownsville, Texas  78520



## JACKSON WALKER L.L.P.

**ATTORNEYS & COUNSELORS**

901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

# FACSIMILE

| | | |
|---|---|---|
| **DATE:** | May 29, 2002 | **TOTAL PAGE COUNT:** 3 |
| **FROM:** | Robert F. Ruckman | **DIRECT DIAL NUMBER:**  (214) 953-6024 |

| NAME | COMPANY NAME | FACSIMILE NUMBER | PHONE NUMBER |
|---|---|---|---|
| Ray R. Marchan | Watts & Heard, L.L.P. | (956) 541-0255 | (956) 546-0333 |
| Joe Valle | Attorney at Law | (956) 542-4084 | (956) 546-2629 |
| Ron A. Sprague | Gendry & Sprague, P.C. | (210) 349-2760 | (210) 349-0511 |

**PLEASE CALL (214) 953-6024
IF YOU DO NOT RECEIVE ALL PAGES.**

FOR INTERNAL USE ONLY:

CLIENT/MATTER NO.:          3642.283

TIMEKEEPER:               RFR1

MESSAGE:

This facsimile is intended only for the use of the addressee. If the addressee of this facsimile is a client or agent for one of our clients, you are further advised that the facsimile contains legally privileged and confidential information which we intended to send to the addressee only.

In any event, if you are not the intended recipient of the facsimile, you are hereby notified that you have received this facsimile inadvertently and in error.   Any review, dissemination, distribution or copying of this is strictly prohibited.   If you have received this in error, please immediately notify us by telephone and return the original facsimile to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the facsimile to us.

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™



# WATTS & HEARD LLP

*Attorneys at Law*

Ray R. Marchan
Attorney at Law

Telephone: (956) 546-0333
Facsimile: (956) 541-0255

June 3, 2002

via fax

Mr. Robert F. Ruckman
Jackson Walker, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Re:     Civil Action No. B-00-176
        Krista Saldana, et al vs. ITT Industries, et al

Dear Mr. Ruckman:

        Enclosed please find Plaintiffs' First Amended Notice of Deposition of Chris
Lowenstein.  Should you have any questions, please do not hesitate to call me.

                            Yours truly,

                            WATTS & HEARD, LLP

                            *Ray R. Marchan*

                            Ray R. Marchan

RRM;lety
Encs.
cc:     Mr. Ron A. Sprague
        Gendry & Sprague, P. C.
        645 Lockhill Selma
        San Antonio, Texas 78216-5057

        Mr. Joe Valle
        Attorney at Law
        1120 East 10th Street
        Brownsville, Texas  78520

Houston • Corp... ...nsville • McAllen
1926 East Elizabeth Street • ... rrmarchan@watts-heard.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KRISTA SALDANA, INDIVIDUALLY | ß | |
| AND AS REPRESENTATIVE OF | ß | |
| THE ESTATE OF DAVID SALDANA | ß | |
| AND AS NEXT FRIEND OF JAGGER | ß | |
| SALDANA | ß | |
| **PLAINTIFFS** | ß | |
| | ß | |
| | ß | CIVIL ACTION NO..: B-00-176 |
| | ß | |
| ITT INDUSTRIES, INC., SIKORSKY | ß | |
| AIRCRAFT CORPORATION, A | ß | |
| SUBSIDIARY OF UNITED | ß | |
| TECHNOLOGIES CORPORATION, | ß | |
| THE ESTATE OF LT. COL. MARC | ß | |
| LEE HOHLE AND THE ESTATE OF | ß | |
| CAPTAIN MATTHEW BRENT THOMAS | ß | |
| | ß | |
| **DEFENDANTS** | ß | |

## FIRST AMENDED NOTICE OF INTENTION TO TAKE VIDEO DEPOSITION

TO:   Sikorsky Aircraft Corporation, by and through their counsel of record, Mr.
Robert F. Ruckman, at Jackson Walker, L.L.P., 901 Main Street, Ste 6000, Dallas,
Texas 75202.

ITT Industries, Inc., defendant, by and through its attorney of record, Mr. Ron A.
Sprague, at Gendry & Sprague, P.C., 645 Lockhill Selma, San Antonio, Texas
78216

PLEASE TAKE NOTICE that, under Federal R.Civ.P. 30, Claimants Krista

Saldana, Individually and As Representative of the Estate of David Saldana and as Next

Friend of Jagger Saldana will take the oral deposition of Chris Lowenstein on June 21,

2002, at 10:00 o'clock a.m. Jackson Walker, L.L.P., 901 Main Street, Suite 6000, Dallas,

Texas 75202, before Esquire Depositions Services. The deposition will continue from

day to day until completed.

The deposition will be taken before a court reporter appointed or designated

under Fed.R.Civ.P. 28. All parties are invited to attend and cross-examine.

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

### TELECOPY TRANSMITTAL COVER SHEET

### CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:      6 / 3 / 0 2

| | | | |
|---|---|---|---|
| TO: | Mr. Robert F. Ruckman | FAX#: | (214) 953-5822 |
| TO: | Mr. Ron A. Sprague | FAX#: | (210) 349-2760 |
| TO: | Ms. Nancy Masso | FAX #: | 548-2549 |
| TO: | Mr. Joe Valle | FAX #: | 542-4084 |

FROM:      Ray R. Marchan

RE:      Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE): 3

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

```
          ********************************
          ***   MULTI TX/RX REPORT   ***
          ********************************
TX/RX NO          0559
INCOMPLETE TX/RX
TRANSACTION OK    (1)   *270#207239#12149535822#
                  (2)   12103492760#
                  (3)   5482549#
                  (4)   5424084#
ERROR
```

# WATTS & HEARD, L.L.P.
### 1926 E. Elizabeth
### Brownsville, Texas  78520
### Tel: (956) 544-0500
### Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege.  The information is intended only for the use of the individual or entity named below.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:    6/3/02

TO:    Mr. Robert F. Ruckman          FAX#:  (214) 953-5822
TO:    Mr. Ron A. Sprague             FAX#:  (210) 349-2760
TO:    Ms. Nancy Masso                FAX #:  548-2549
TO:    Mr. Joe Valle                  FAX #:  542-4084

FROM:   Ray R. Marchan

RE:    Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE): 3

# WATTS & HEARD LLP

### Attorneys at Law

Ray R. Marchan
Attorney at Law

Telephone: (956) 546-0333
Facsimile: (956) 541-0255

June 17, 2002

via fax

Mr. Robert F. Ruckman
Jackson Walker, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Re:     Civil Action No. B-00-176
        Krista Saldana, et al vs. ITT Industries, et al

Dear Mr. Ruckman:

Please be informed that my expert, Mr. Ed Monhollen, will be present for the taking of Chris Lowenstein's deposition this Friday.

Should you have any questions, please do not hesitate to call me.

Yours truly,

WATTS & HEARD, LLP

Ray R. Marchan

RRM;lety
Encs.
cc:     Mr. Ron A. Sprague
        Ms. Nancy Masso
        Mr. Joe Valle



Houston •                                    Brownsville • McAllen
1926 East Elizabeth Str                      Email: rrmarchan@watts-heard.com

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:     6 / 1 7 / 0 2

TO:     Mr. Robert F. Ruckman     FAX#:  (214) 953-5822
TO:     Mr. Ron A. Sprague     FAX#:  (210) 349-2760
TO:     Ms. Nancy Masso     FAX #:  548-2549
TO:     Mr. Joe Valle     FAX #:  542-4084

FROM:     Ray R. Marchan

RE:     Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE):  2

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            0659
CONNECTION TEL      #207239#12149535822#
SUBADDRESS
CONNECTION ID       JACKSON WALKER
ST. TIME            06/17 14:31
USAGE T             00'49
PGS.                   2
RESULT             OK
```



**WATTS & HEARD** LLP

*Attorneys at Law*

Ray R. Marchan
Attorney at Law

Telephone: (956) 546-0333
Facsimile: (956) 541-0255

June 17, 2002

via fax

Mr. Robert F. Ruckman
Jackson Walker, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Re:   Civil Action No. B-00-176
      Krista Saldana, et al vs. ITT Industries, et al

Dear Mr. Ruckman:

    Please be informed that my expert, Mr. Ed Monhollen, will be present for the taking of Chris Lowenstein's deposition this Friday.

    Should you have any questions, please do not hesitate to call me.

    Yours truly,

    WATTS & HEARD, LLP

    *Ray R Marchan*

    Ray R. Marchan



ATTORNEYS & COUNSELORS
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

JACKSON WALKER L.L.P.

Robert K. Ruckman
(214) 953-6024
rruckman@jw.com

June 18, 2002

**VIA FACSIMILE**
Ray R. Marchan
WATTS & HEARD, P.C.
1926 E. Elizabeth
Brownsville, Texas 78520

Re:   Civil Action No. B-00-176; *Krista Saldana, et al. v. ITT Industries, Inc., et al.,* in the United States District Court, Southern District of Texas, Brownsville Division

Dear Ray:

I am in receipt of your letter of June 17th in which you advise that your expert, Ed Monhollen, plans to attend the deposition of Chris Lowenstein scheduled for Friday, June 21st.

Your request brings to a head a concern which we have regarding your use of Ed Monhollen as an expert in this case. As you are aware, Mr. Monhollen is a former employee of Sikorsky Aircraft, the Defendant herein. As described in his own resume, Mr. Monhollen was a senior airworthiness engineer whose primary duties "involved the worldwide investigation of accidents involving Sikorsky helicopters, participation in the Products Safety Board, management of in-house engineering investigations, and safety audits of Sikorsky facilities."

First, in case Mr. Monhollen has not brought this to your attention, enclosed is a copy of an Intellectual Property Agreement signed by Mr. Monhollen which prohibits him from disclosing any technical information obtained during his employment at Sikorsky.

Second, enclosed is a recent opinion in *In re Bell Helicopter Textron, Inc.* involving a former Bell Helicopter employee and investigator who was retained by plaintiff's counsel to serve as a consulting expert against Bell. The Fort Worth Court of Appeals not only found that the expert was disqualified but also that the plaintiff's counsel was disqualified as well. We feel that the Bell facts are directly on point with your retention of Mr. Monhollen in your case against Sikorsky Aircraft.

At this time, we are willing to forego seeking a disqualification of you as trial counsel if you can agree that Mr. Monhollen will not be used either as a consulting or testifying expert against Sikorsky in this case and that you have not been provided confidential information to date by Mr. Monhollen, which he obtained from Sikorsky.

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™

Ray R. Marchan
June 18, 2002
Page 2

---

Please let me know whether we can resolve these issues prior to Mr. Lowenstein's deposition on Friday, June 21ˢᵗ. We will obviously object to Mr. Monhollen's attendance under these circumstances.

Very truly yours,

Robert F. Ruckman

RFR/kjw
Enclosure

cc:   **VIA FACSIMILE**
      Ron A. Sprague
      GENDRY & SPRAGUE, P.C.
      645 Lockhill Selma
      San Antonio, TX 78216-5057
      (*w/encl.*)

      **VIA FACSIMILE**
      Joe Valle
      Attorney at Law
      1120 East Tenth Street
      Brownsville, Texas  78520
      (*w/encl.*)

## INTELLECTUAL PROPERTY AGREEMENT

As an employee of UNITED TECHNOLOGIES CORPORATION, or any of its direct or indirect subsidiaries, their successors or assigns (hereinafter referred to collectively as the EMPLOYER), I, the EMPLOYEE named below, agree as follows:

1. Unless the EMPLOYER has acquired specific authorization, I will not disclose to or use in my work with the EMPLOYER any proprietary information of others, including any of my prior employers.

2. I will not, either during or after my employment, use, publish or otherwise disclose, except for the EMPLOYER's benefit in the course of such employment, any technical or business information developed by, for or at the expense of the EMPLOYER, or assigned or entrusted to the EMPLOYER by me or anyone else, unless such information is generally known outside of the EMPLOYER; and I will deliver to or leave with the EMPLOYER all written and other materials containing such information upon termination of my employment.

3. I agree that all trade secrets, all inventions, all works of authorship (including illustrations, writings, mask works, software and computer programs), and all other business or technical information created or conceived by me, either alone or with others, while employed by the EMPLOYER and related to the existing or contemplated business or research of the EMPLOYER or resulting from my work with the EMPLOYER, belong to the EMPLOYER. Until proven otherwise, any invention shall be presumed to have been conceived during such employment if within one (1) year after termination of such employment it is disclosed to others, or it is completed, or it has a patent application filed thereon.

4. I will promptly disclose to the EMPLOYER all trade secrets, inventions, works of authorship, and information which belong to the EMPLOYER under paragraph 3 above; and I will assign to the EMPLOYER, or to others as directed by the EMPLOYER, all of my interest in such inventions and works of authorship, and I will execute any papers and do any acts which the EMPLOYER may consider necessary to secure to it any and all rights relating to such inventions and works of authorship, including all patents and copyrights (and renewals thereof) in any country.

5. I understand that the EMPLOYER agrees to pay to me, in addition to my salary and wages, the sum of One Hundred Dollars ($100.00) upon the granting of a United States Patent on an invention assigned under the provisions of paragraph 4.

This Agreement shall become effective immediately upon and in consideration of my receiving a promotion or an increase in salary or wages subsequent to the date executed, and upon becoming effective shall supercede all prior oral or written agreements with respect to the subject matter hereof. This Agreement does not alter nor shall it be deemed to alter, the employment relationship, whether at-will or contractual, between the EMPLOYER and the EMPLOYEE.

I acknowledge receipt of an executed copy of this Agreement.

This Agreement is executed this _22_ day of _JANUARY_, 19_88_, at _STRATFORD_, _CT_.
City                State

UNITED TECHNOLOGIES CORPORATION            EMPLOYEE
BY                                         Signature _William J. Marshall Jr._
Signature _Wesley M. Shafer_               Print Name _EDWARD L. MARSHALL JR._
Print Name _WESLEY M. SHAFER_              Residence _16 POINT BEACH DR._
Title _CHIEF-AIRCRAFT SAFETY INVESTIGATION_  City _MILFORD_
                                           State _CT_        ZIP _06460_

UTC-1E CORP U.S. 1-87

CONTRACTS AND COUNSEL COPY



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-02-058-CV

IN RE                                                                RELATORS
BELL HELICOPTER TEXTRON, INC.,
BELL HELICOPTER TEXTRON, A DIVISION
OF TEXTRON CANADA LTD., AND TEXTRON, INC.

------------

### ORIGINAL PROCEEDING

------------

## OPINION

------------

### I.  Introduction

Relators Bell Helicopter Textron Inc., Bell Helicopter Textron, a Division of Textron Canada Ltd., and Textron Inc., defendants in the trial court, seek mandamus relief from the trial court's order denying their motion to disqualify plaintiffs' trial counsel in the underlying lawsuit.  The real parties in interest (RPIs) in this original proceeding are the plaintiffs below.  Relators contend that RPIs' counsel should be disqualified because they have employed as a

consulting expert a former Bell employee who knows a great deal of Bell's confidential information about the issues in the underlying suit. Relators contend that a "Chinese wall" cannot be used effectively in this case. Because we agree that Bell's former employee cannot be effectively screened, we conditionally grant the petition for writ of mandamus.

## II. Background Facts

RPIs are suing relators for damages allegedly caused by a Bell 412 helicopter crash that occurred in August 1997. RPIs have hired as a consulting expert a former Bell Helicopter Textron (Bell) employee, Caren Vale. Vale worked for Bell for over ten years, from 1977 to 1987.

While at Bell, Vale worked as an engineer in Bell's System Safety Group. She worked on the development of safety systems for aircraft manufactured by Bell, including crash-resistant fuel systems and energy-attenuating seats, at least some of which were on the model 412 aircraft. Later, she became an accident investigator and then Chief of Flight Safety. In these latter two capacities, Vale worked with Bell's inhouse and outside counsel to develop legal strategies for defending against lawsuits that arose out of helicopter crashes involving Bell's helicopters, including the model 412 helicopter.

Relators discovered that RPIs had hired Vale as a consulting expert in the underlying case when they were noticed for a deposition and the notice

2

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE: 6/17/02

| | | | |
|---|---|---|---|
| TO: | Mr. Robert F. Ruckman | FAX#: | (214) 953-5822 |
| TO: | Mr. Ron A. Sprague | FAX#: | (210) 349-2760 |
| TO: | Ms. Nancy Masso | FAX #: | 548-2549 |
| TO: | Mr. Joe Valle | FAX #: | 542-4084 |

FROM: Ray R. Marchan

RE: Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE): 2

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0660 |
| CONNECTION TEL | #207239#12103492760# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 06/17 14:32 |
| USAGE T | 00'48 |
| PGS. | 2 |
| RESULT | OK |

disclosed that Vale would also attend. Upon learning this, relators immediately moved to quash the deposition. At the hearing on the motion to quash, relators also sought to have Vale disqualified as an expert. The trial court granted the motion to quash, but refused to rule on relators' disqualification request because no motion requesting Vale's disqualification as an expert had been filed.

Relators later moved to disqualify RPIs' counsel because of Vale's possession of Bell's work product and confidential litigation information. Relators contended that, while Vale worked for Bell, she was privy to Bell's confidential information, trial strategy, work product, and attorney-client communications that arose in matters substantially related to those in the underlying case. Relators contended that RPIs could not effectively screen Vale's work for them so that there was no threat that she would divulge Bell's confidential information to RPIs. The trial court denied relators' motion to disqualify, and relators seek mandamus relief from that ruling.

### III. Standard of Review

The granting or denial of a motion to disqualify is reviewable by mandamus. *See Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 133 (Tex. 1996) (orig. proceeding); *In re Bahn*, 13 S.W.3d 865, 872 (Tex. App.—Fort Worth 2000, orig. proceeding). Mandamus will issue only to correct

3

a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *In re Daisy Mfg. Co.,* 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839-40. This burden is a heavy one. *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).

Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker,* 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

## IV.    Attorney Disqualification Based on Nonattorney's Possession of Confidential Information

Whenever counsel undertakes representation of an interest that is adverse to that of a former client, the lawyer is disqualified from representing the new client if the matters embraced in the former lawsuit are "substantially related" to the factual matters involved in the pending lawsuit. *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 833 (Tex. 1994) (orig. proceeding); *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 299 (Tex. App.—Dallas 1988, orig. proceeding). This strict rule is based on a conclusive presumption that confidences were imparted to the attorney during the prior representation. *Phoenix Founders,* 887 S.W.2d at 833. The purpose of the presumption is to prevent the party seeking disqualification from being forced to reveal the very confidences sought to be protected. *In re Am. Home Prods. Corp.,* 985 S.W.2d 68, 74 (Tex. 1998) (orig. proceeding). This conclusive presumption has also been applied to legal secretaries, paralegals, legal assistants, and freelance consultants. Such a support staff member who has worked on a case "must be subject to . . . a conclusive presumption that confidences and secrets were imparted." *Id.*

Similarly, if an attorney moves from one law firm to another, there is a conclusive presumption that an attorney who obtained confidential information

contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:     6/17/02

TO:     Mr. Robert F. Ruckman     FAX#:  (214) 953-5822
TO:     Mr. Ron A. Sprague        FAX#:  (210) 349-2760
TO:     Ms. Nancy Masso           FAX #:  548-2549
TO:     Mr. Joe Valle             FAX #:  542-4084

FROM:   Ray R. Marchan

RE:     Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE):  2

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.

```
                                    0    #018
                              NG
                               0                          RESULT
                           00.00                          PGS.
                      06/17 14:41                         USAGE T
                                                          ST. TIME
                                                          CONNECTION ID
                                                          SUBADDRESS
                #4808242695327102022                      CONNECTION TEL.
                            0661                           TX/RX NO
                                                          ON

              TX FUNCTION WAS NOT COMPLETED

          ***************************
          ***    ERROR TX REPORT    ***
          ***************************
```

from the prior firm shares it with the members of his new firm.  *Phoenix Founders,* 887 S.W.2d at 834.  This latter presumption is not automatically applied to paralegals and other nonlawyers, however, in order not to unnecessarily impede their mobility for employment purposes.  *Id.* at 834-35. Instead, the new firm can rebut application of the presumption if (1) it strictly adheres to a screening process and (2) the nonlawyer does not reveal any information relating to the former employer's clients to any person in the new firm.  *Id.* at 834.

> The screening process requires the following steps:
>
> - The newly hired nonlawyer must be cautioned not to disclose any information relating to the representation of a client of the former employer.
>
> - The nonlawyer must be instructed not to work on any matter on which she worked during the prior employment, or regarding which she has information relating to the former employer's representation.
>
> - The new firm should take other reasonable steps to ensure that the nonlawyer does not work in connection with matters on which she worked during the prior employment, absent client consent after consultation.

*Id.* at 835.

To determine whether the screening has been effective, courts should consider: the substantiality of the relationship between the former and current matters; the time elapsed between the matters; the size of the firm; the number

6

of individuals presumed to have confidential information; the nature of their involvement in the former matter; and the timing and features of any measures taken to reduce the danger of disclosure. *Id.* at 836. Also, if the old firm and the new firm represent adverse parties in the same proceeding, rather than in different proceedings, the danger of improper disclosure by the nonlawyer is increased. *Id.* But even if the new employer uses the screening process, disqualification will always be required—absent the former client's consent—under some circumstances, such as:

- when information relating to the representation of an adverse client has in fact been disclosed; or

- when screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked.

*Id.* at 835.

To show that a substantial relationship requiring disqualification exists, the party seeking disqualification must prove that the facts and issues involved in both the former and present litigation are so similar that there is a genuine threat that confidences revealed to the party's former counsel will be divulged to his present adversary. *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 51 (Tex. 1998) (orig. proceeding); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399-400 (Tex. 1989) (orig. proceeding); *see also Texaco, Inc. v. Garcia*, 891

7

S.W.2d 255, 257 (Tex. 1995) (orig. proceeding) (holding that substantial

relationship existed where cases involved similar liability issues, scientific

issues, defenses, and strategies). To meet its burden of proof, the movant

must provide evidence of specific similarities capable of being recited in the

disqualification order. *Coker,* 765 S.W.2d at 400. If this burden is met, the

movant is entitled to a conclusive presumption that confidences and secrets

were imparted to the former attorney. *Id.* The actual disclosure of confidences

need not be proven; the issue is whether a genuine threat of disclosure exists

because of the similarity of the matters. *Epic Holdings,* 985 S.W.2d at 51;

*Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 467 (Tex. 1994) (orig.

proceeding).

### A. Vale is Privy to Confidential Information About Bell's Cases Involving the Model 412 Aircraft

In this case, RPIs' pleadings show that the suit against relators arises out

of a model 412 Bell helicopter crash. RPIs contend, among other things, that

relators were negligent in designing and installing an unsafe fuel system on the

helicopter, in deciding not to retrofit the aircraft with a safe fuel system even

though relators knew one was available, and in not warning RPIs about the

unsafe system. The record shows that, as an accident investigator and Chief

of Flight Safety for Bell, Vale was present at numerous meetings with Bell's

inhouse and outside counsel where legal strategy related to numerous lawsuits was discussed, including suits involving the model 412 aircraft. Topics of discussion included attorney mental processes related to the design and manufacture of aircraft systems.[1] Vale also worked on developing crash-resistant fuel systems for Bell aircraft, including the model 412 aircraft. Thus, there is ample evidence that Vale was privy to confidential information about matters substantially similar to the matters involved in the underlying lawsuit.

Based on this evidence, Vale is clearly subject to the conclusive presumption that confidences and secrets about Bell's cases involving model 412 aircraft were imparted to her. *See Am. Home Prods. Corp.,* 985 S.W.2d at 74. Also, this evidence is specific enough that it is capable of being recited in a disqualification order. *See Coker,* 765 S.W.2d at 400. Because Vale is not a lawyer, however, we cannot conclusively presume that Vale has shared or will share the information she obtained while working for Bell with RPIs' attorneys. *See Phoenix Founders,* 887 S.W.2d at 834. Instead, we must determine whether RPIs' attorneys can effectively screen Vale's work so that

---

[1] Vale's other duties as an accident investigator and Chief of Flight Safety included acting as manufacturer's representative and working with investigating authorities, such as the National Transportation Safety Board and the Federal Aviation Administration. But there is no evidence, as RPIs suggest, that the NTSB or FAA were privy to Bell's litigation strategies, attorney work product, or client communications.

there is no threat that Vale may reveal any of Bell's confidential information to RPIs. In making this determination, we focus not on Vale's credibility but on the similarity of the matters at issue. *See Epic Holdings,* 985 S.W.2d at 51; *Grant,* 888 S.W.2d at 467.

### B. Vale Cannot be Effectively Screened

To show that they have effectively screened Vale's work, RPIs tendered two affidavits from Vale. In her first affidavit, Vale states that she has never violated any confidentiality agreement, divulged Bell's proprietary information or trade secrets, or discussed or revealed any of Bell's trial strategies, attorney-client privileged information, or attorney work product. These statements are merely conclusory and are therefore not probative evidence on the disqualification issue. *See Am. Home Prods. Corp.,* 985 S.W.2d at 74 (holding that lawyer's and paralegal's conclusory, uncontroverted opinions about what constituted "confidential information" had no probative value and did not raise a fact issue about whether counsel should be disqualified); *see also* TEX. R. CIV. P. 166a(c) (providing that, in a summary proceeding, the testimony of an interested witness must be of the type that can be readily controverted). Vale also states that Bell has not made her aware of any trial tactics and she has no confidential information that may have a bearing on the case. These bald assertions do not controvert relators' specific evidence that Vale was privy to

10

many of Bell's legal strategies in suits involving aircraft safety systems and the model 412 aircraft.

In her second affidavit, Vale states that she has never worked "on the case involving the incident in Cuernavaca for Bell or anyone else." We presume, for purposes of this opinion, that this is a reference to the underlying lawsuit. Vale also states that she has agreed not to disclose to RPIs any information regarding legal representation of Bell that she acquired while associated with Bell or from anyone who represented Bell and not to work on any "legal matter" she worked on while associated with Bell. She states that, in her association with RPIs' attorneys, she has relied exclusively on her general engineering and aviation knowledge, skill, and experience. Relators also stipulated in the trial court that, at the time they moved to disqualify RPIs' counsel, they had no direct evidence that Vale had shared any privileged or confidential information with RPIs' attorneys or that RPIs' attorneys had requested such information from Vale.

These representations about Vale's working arrangement with RPIs or relators' stipulation are not evidence of effective screening. Vale worked for Bell on litigation involving the safety systems on the model 412 aircraft, and the underlying case involves a model 412 aircraft with an allegedly unsafe fuel system design. Thus, the issues in the underlying case and those in the

11

lawsuits on which Vale worked for Bell are substantially related, and the genuine threat of disclosure exists simply because of the similarity of the matters involved in the former and the current cases. Vale's actual disclosure of confidences need not be proven before disclosure is required. *See Epic Holdings,* 985 S.W.2d at 51. To the contrary, because RPIs have hired Vale to work on the underlying case that is against Bell, as one of the relators, Vale will be required to work on the other side of a litigation matter that is substantially related to other litigation on which she has previously worked for Bell. Under these circumstances, disqualification is required despite RPIs' attempts to effectively screen Vale. *See Phoenix Founders,* 887 S.W.2d at 835 (stating that disqualification will always be required when the nonlawyer necessarily would be required to work on the other side of the same or a substantially related matter).

RPIs also claim that their screening of Vale's work is effective because of the great amount of time that elapsed between Vale's employment for Bell and her work in the underlying case—nearly fourteen years—and the immediate timing of the measures taken to reduce the danger of disclosure. However, because Vale worked on litigation for Bell involving substantially the same matters related to the model 412 aircraft that are at issue in the underlying case and because the nature of Vale's involvement in the cases on which she

12

worked for Bell was significant, RPIs cannot effectively screen Vale despite their thorough efforts to do so.

### V. Waiver

Regardless of whether Vale can be effectively screened, RPIs further contend that any knowledge Vale has is discoverable because Bell has designated Vale as a testifying expert on many occasions, including cases involving the fuel system on the model 412 aircraft. RPIs contend that relators have thereby waived whatever privileges they assert existed regarding Vale's confidential knowledge. To support their position, RPIs rely on the discovery rules governing testifying experts.

The discovery rules provide that a party may obtain the following information from testifying experts:

- the subject matter on which the expert will testify;

- the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is sought, regardless of when and how the factual information was acquired;

- the expert's mental impressions and opinions concerning the case, any methods used to derive them, and a brief summary of the basis for the impressions and opinions; and

- all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or

13

prepared by or for the expert in anticipation of the expert's
testimony.

TEX. R. CIV. P. 192.3(e); 194.2(f).

The supreme court has held that if communications with an expert may

be discovered during the course of litigation by opposing counsel, that

information cannot be considered confidential, and the fact that it has been

shared with opposing counsel cannot be the basis for disqualification. *Am.*

*Home Prods. Corp.,* 985 S.W.2d at 73-74. RPIs contend that, because Vale's

mental impressions and opinions and her factual knowledge underlying those

impressions and opinions were discoverable in prior litigation due to her

testifying-expert status, they are not confidential in the underlying litigation.

RPIs further contend that, because Vale testified for Bell as an expert witness

in several prior lawsuits, *any* information she has acquired is discoverable,

regardless of when or how the information was acquired. We do not read the

discovery rules this broadly. Rule 192.3(e) provides only that the testifying

expert's mental impressions and opinions *concerning the case,* and the facts

known by the expert that relate to or form the basis for the expert's mental

impressions and opinions *formed or made in connection with the case in which*

*discovery is sought,* are discoverable. TEX. R. CIV. P. 192.3(e); *see also Aetna*

*Cas. & Sur. Co. v. Blackmon,* 810 S.W.2d 438, 440 (Tex. App.—Corpus Christi

14

1991, orig. proceeding) (holding that designation of party employee as a testifying expert waived attorney-client, work product, and party communications privileges only as to the privileged information the expert relied on in forming his mental impressions and opinions related to the case). Accordingly, the facts known to Vale concerning the model 412 aircraft and its safety systems are discoverable based on her status as a former testifying expert for Bell only if she has been designated as a testifying expert with regard to those matters.[2]

There is some evidence in the mandamus record that Vale has acted as a testifying expert for Bell. David Broiles, who has worked as outside counsel for Bell on numerous cases states by affidavit that Vale, as a Bell employee, served "as an assistant and expert with the litigation team." Vale's own affidavit states, "In some matters I have represented Bell as a consultant and expert witness." The record also contains a "Preliminary Report of Aircraft Accident" that was prepared by Vale and Bell in 1987. The report appears to

---

[2]The discovery rules provide that the facts known to an expert and underlying the expert's mental impressions and opinions related to a case are discoverable "regardless of when and how the factual information was acquired." TEX. R. CIV. P. 192.3(e)(3). Because, as we discuss below, there is no evidence that Vale has served as a testifying expert for Bell with regard to the model 412 aircraft, we need not decide whether this phrase refers to information acquired regarding matters that would otherwise be protected by the attorney-client or attorney work product privileges.

be an expert's report and contains conclusions about the probable cause of the accident discussed in the report. Finally, the record contains an excerpt from a deposition given by Vale, to which is attached a list of cases in which she served "either as a witness, consultant or expert" for Bell. While none of these documents specifically state that Vale was a testifying expert, as opposed to a consulting one, the facts that Vale gave a deposition and produced a report on at least one accident are some evidence that she acted as a testifying expert.

Nonetheless, there is no evidence that Vale served as a testifying expert for Bell with regard to the model 412 aircraft. The accident report refers to the Bell model 212 aircraft, not the 412. In addition, none of the aircraft models mentioned in the list of cases in which Vale served as a witness, consultant, or expert is the model 412 aircraft. Several of the cases listed match those in Broiles's affidavit. They are: Canada (model UH-18 or UH-1B), Murphy (model UH-IE), Krissinger (model AH-IS), Seastrunk (model OH-58), Higgins (model AH-IS), Miller (model AH-IG), Dowd/Ellis (model AH-IS), Stultz (model 206), Nakahira (model AH-IS), Ramsey (model 206), and Martinez (model 206). Broiles's affidavit does not state, however, that he worked with Vale on any litigation involving the 412 aircraft. While this evidence is sufficient to show that Vale served as a testifying expert for Bell with regard to several models of

16

aircraft, it does not establish that Bell was a testifying expert regarding the model 412. Further, there is no evidence in the record that the model 412 aircraft or its fuel safety system is substantially similar to the aircraft for which Vale may have served as a testifying expert.

Because the record does not show that Vale served as a testifying expert for Bell regarding the model 412 aircraft or that any of the aircraft for which Vale served as a testifying expert are substantially similar to the model 412 aircraft, there is no evidence that relators have waived their right to assert that the information Vale knows about the model 412 aircraft and its fuel safety system or about Bell's litigation strategies involving the model 412 aircraft is confidential.

## VI.  Vale as a Fact Witness

RPIs also assert that whatever information Vale knows that is relevant to the underlying case is discoverable because she has first-hand knowledge of relevant facts and must therefore be designated as a fact witness. The supreme court has held that a party cannot shield its employees who have knowledge of facts relevant to a case from the discovery process simply by designating them as consulting-only experts. *Axelson, Inc. v. McIlhaney,* 798 S.W.2d 550, 554-55 (Tex. 1990) (orig. proceeding). If employees obtain factual information relevant to a case simply by virtue of their employment as

17

employees, rather than as consulting experts, that information is discoverable. *Id.* Indeed, while the identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are *not* discoverable, the facts known first-hand to the consulting expert *are* discoverable. TEX. R. CIV. P. 192.3(e); *Axelson,* 798 S.W.2d at 554.[3]

Relators appear to agree with RPIs that Vale is or will be a fact witness in the underlying case. Relators asserted in the trial court that Vale was a fact witness for Bell, "not only internally with design, but externally with investigations for Bell that she conducted." In fact, at the hearing on their motion to quash a deposition at which Vale was scheduled to attend as a consulting expert for RPIs, relators asserted that Vale should not be allowed to attend the deposition because of her status as a fact witness for Bell. *See* TEX. R. CIV. P. 199.5(d) (providing that an oral deposition must be conducted in the same manner as if the testimony were being obtained in court during trial); TEX. R. CIV. P. 267 (providing that witnesses on both sides may be placed "under the rule" so they cannot hear the testimony of any other witness in the case); TEX.

---

[3]This rule does not, however, extend to consulting-only experts whose only source of factual information was the consultation. *Axelson,* 798 S.W.2d at 554.

R. EVID. 614 (same). Relators contended that Vale was not "a person whose presence is . . . essential to the presentation of the cause"—an exception to the exclusionary reach of rules 267 and 614—because she was a fact witness. TEX. R. CIV. P. 267(b)(3); TEX. R. EVID. 614(3).

Information that may be discovered from a fact witness does not, however, include information about an opponent's litigation strategies, attorney work product, or other information exempted from discovery by the attorney-client privilege. *See* TEX. R. CIV. P. 192.3(c) ("A person has knowledge of relevant facts when that person has or may have knowledge of any *discoverable* matter.") (emphasis added); *id.* (providing that an expert can be a fact witness only with regard to knowledge obtained first-hand and not obtained in preparation for trial or in anticipation of litigation). Accordingly, while factual information about the model 412 aircraft that Vale knows first-hand because of her employment with Bell may be discoverable because she has been or should be designated as a fact witness, Vale's knowledge about Bell's litigation strategies, attorney work product, and privileged communications is not discoverable based on her fact-witness status.

19

disqualify and enter an order granting the motion.  Our writ will issue only if the

trial court fails to act in accordance with this opinion.


                                        **TERRIE LIVINGSTON**
                                        **JUSTICE**

PANEL B:   DAY, LIVINGSTON, and GARDNER, JJ.

        **PUBLISH**
[DELIVERED MAY 20, 2002]


21

## VII. Conclusion

The record shows that, while Vale worked for Bell, she obtained confidential information about the model 412 aircraft and its fuel safety system, as well as confidential information about Bell's litigation strategies and attorney work product in lawsuits involving the model 412 aircraft. RPIs cannot effectively screen Vale because, as a consulting expert, she will be required to work on the other side of litigation that is substantially related to litigation on which she has previously worked for Bell. Relators have not waived their right to assert that the information Vale knows about the model 412 aircraft and its fuel safety system or about Bell's litigation strategies involving the model 412 aircraft is confidential because the record does not specifically show that Vale has served as a testifying expert for Bell regarding the model 412 aircraft or any aircraft that is substantially similar to the model 412. In addition, Vale's knowledge of Bell's litigation strategies, attorney work product, and privileged communications concerning the model 412 aircraft is not discoverable based on Vale's fact-witness status.

Because RPIs' counsel cannot effectively screen Vale, they must be disqualified from representing RPIs in the underlying lawsuit. The trial court abused its discretion by denying relators' motion to disqualify RPIs' counsel. We direct the trial court to vacate its order denying relators' motion to

20



# WATTS & HEARD LLP

*Attorneys at Law*

Ray R. Marchan
Attorney at Law

Telephone: (956) 546-0333
Facsimile: (956) 541-0255

April 1, 2002

Clerk
United States District Court
600 East Harrison, Ste 101
Brownsville, Texas 78520

      Re:    Civil Action No. B-00-176
              Krista Saldana, et al vs. ITT Industries, et al

Dear Sirs:

    As per the scheduling order, enclosed herewith please find original and one copy of the Plaintiffs' Initial Designation of Experts for filing.

    By copy of this letter, I am forwarding a copy of the same to opposing counsel as indicated below.

    Thank you.

              Yours truly,

              WATTS & HEARD, L.L.P.

              Ray R. Marchan

RRM;Lety
Encs.
cc:  Mr. Robert F. Ruckman
     Mr. Ron A. Sprague
     Ms. Nancy Masso



Houston • Co... ...ownsville • McAllen
1926 East Elizabeth Street ... ...ail: rrmarchan@watts-heard.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
RECEIVED

APR 0 1 2002

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| KRISTA SALDANA, INDIVIDUALLY | ß | |
| AND AS REPRESENTATIVE OF | ß | |
| THE ESTATE OF DAVID SALDANA | ß | |
| AND AS NEXT FRIEND OF JAGGER | ß | |
| SALDANA | ß | |
| PLAINTIFFS | ß | |
| | ß | |
| | ß | CIVIL ACTION NO. B-00-176 |
| | ß | |
| ITT INDUSTRIES, INC., SIKORSKY | ß | |
| AIRCRAFT CORPORATION, A | ß | |
| SUBSIDIARY OF UNITED | ß | |
| TECHNOLOGIES CORPORATION, | ß | |
| THE ESTATE OF LT. COL. MARC | ß | |
| LEE HOHLE AND THE ESTATE OF | ß | |
| CAPTAIN MATTHEW BRENT THOMAS | ß | |
| | ß | |
| DEFENDANTS | ß | |

PLAINTIFFS' INITIAL DESIGNATION OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME, Plaintiffs by and through their attorneys of record, and respectfully file these their supplemental designation of experts as follows:

Edward Monhollen & Associates
Consultants in Aviation Safety
13438 Bandera Road
Suite 105A
Helotes, Texas   78023
(210)  695-5810
(210)  695-5811   Fax

Is expected to testify regarding aircraft safety and accident reconstruction. Attached to this designation is Mr. Monhollen's expert report, resume and list of previous testimony.



## CROSS-DESIGNATION OF EXPERTS

Plaintiffs hereby cross-designate and state that they may call any expert identified or designated by an adverse party or an employee or representative of an adverse party to elicit expert opinions subject to any objections Plaintiffs make concerning the designation of experts.

## DESIGNATION OF MEDICAL DOCTORS & NURSES

In addition to the above designations, Plaintiffs refer you to the medical records and nurses notes, from which the identities of medical doctors and nurses may be determined. Plaintiffs hereby designate such doctors, nurses and caregivers as experts who may be called to testify as expert witnesses at the time of trial to prove up the reasonableness and medical necessity of Plaintiffs' expenses.

Respectfully submitted on this the _____/_____ day of April, 2002.

WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956)  544-0500
(956) 541-0255   Fax


RAY R. MARCHAN
For the Firm

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___/___ day of April, 2002, a true and correct copy of the foregoing instrument was delivered to opposing counsel by hand-delivery, via fax or by certified mail, return receipt requested.

RAY R. MARCHAN



# Edward Monhollen & Associates

### Consultants in Aviation Safety

**REPORT OF FINDINGS AND OPINIONS**
**Krista Saldana, et al. vs. ITT Industries, et al.**
**CH-53E Helicopter Accident of 19 April 1999**
**BUNO 162007**

**A. GENERAL:** The following report is submitted in compliance with Rule 26 (a) (2) (A)- (B) of the Federal Rules of Civil Procedure pertaining to the expert testimony the author expects to present in the above stated case.

**B. BACKGROUND:** I have been retained by the firm of Watts & Heard, L L P. to review the facts and circumstances surrounding the above stated accident and to provide my opinions as to the cause(s) of the accident.

**C. WITNESS QUALIFICATIONS:** My resume is attached as enclosure 1.

**D. COMPENSATION:** My hourly fee is $125.00. Additionally, I charge $1,200 00 per day for deposition and trial testimony.

**E. PREVIOUS TESTIMONY:** A list of my case involvement for the past 4 years is attached as enclosure 2.

**F. DATA CONSIDERED:** I have reviewed the relevant portions of the documents listed at enclosure 3 in forming my opinions.

**G. SUMMARY OF ACCIDENT:** The mishap flight was to be a low light level (LLL), night vision goggle (NVG) training flight using approved NVG routes and training areas within the vicinity of Okinawa. The forecast weather for the mission was 1000 feet overcast and 3 miles visibility with light rain in the vicinity. The flight was properly briefed and proceeded without incident until their planned landing at Fire Base Jones. Neither aircrew could identify the intended landing area, so the flight continued as planned with Tiger 03 still leading the section. A lead change was scheduled at Fire Base Jones while on the ground, but since the section did not land, Tiger 03 was still in the lead as the flight turned south over water and paralleled the coast of Okinawa. Deteriorating weather to south necessitated a return by the northern route, so the aircrews coordinated the 180 degree turn with a lead change. Tiger 07, the mishap aircraft, was to begin his turn followed by Tiger 03, who would then join on Tiger 07 to complete the lead change. Tiger 07 was observed to begin his turn to the left, toward the open sea, and as he passed through the six o'clock position of Tiger 03, he began his turn to the left. The aircrew of Tiger 03 then

Report, Edward Monhollen                    2

observed a bright flash of light as Tiger 07 impacted the water. All four crewmembers were fatally injured on impact and the aircraft destroyed

## H. SUMMARY OF EXPECTED TESTIMONY:

1. Opinion: That the turn to the left toward the open sea and away from the cultural lighting greatly increased the difficulty of the maneuver, but should have been within LtCol Hohle's capabilities.

   Bases: While Captain Thomas was participating in his first LLL mission, LtCol Hohle had accumulated over 300 hours of NVG flight with 79 hours being in LLL conditions. He was also a designated Night Systems Instructor and apparently comfortable with the conditions that night, since he had raised no concerns with the exception of the southern route weather. An argument can be made that LtCol Hohle was distracted, having now to assume the section navigational duties, but I believe this to be unlikely, as well. Finding of fact #99 in the JAGMAN report places Tiger 03 at 500 feet and 100 knots prior to the lead change. Major Paul, on page 48 of his deposition stated that only 12 seconds elapsed from the start of Tiger 07's turn until impact. That translates to an average rate of descent of 2,500 feet per minute; hardly the "gradual loss of altitude" referred to in LtCol Samples deposition as being difficult to perceive with NVG's. This rate of descent would require a substantial reduction in collective pitch to achieve; it would not go unnoticed by the other crewmembers.

2. Opinion: That the "Low" warning light on the radar altimeter is inadequate to alert NVG pilots to the fact that they are descending below their selected altitude. The manufacturer should have incorporated an aural warning at the same time NVG cockpit compatible lighting was installed.

   Bases: LtCol Samples, the Staff Judge Advocate Investigating Officer, and the author of the JAGMAN report, expresses this same opinion on page 23 of his report and again in his deposition. It has been my experience that the most frequently stated cause for NVG accidents has been "Controlled flight into terrain or water". I'm certain that this will be borne out by statistics gathered from the military data bases; a topic addressed in the paragraphs to follow. Regardless, a manufacturer has the responsibility to warn operators of their products when a situation exists that could result in damage to the aircraft or injury to crew and/or passengers. In this case, Sikorsky Aircraft was certainly aware the NVG were in use in the H-53E helicopters; NVG cockpit compatible lighting bares that out. Further, Sikorsky has access to the same databases that we do, if fact, they participate in the on-site accident investigations. They must be cognizant of the fact that even with radar altimeters installed, controlled flight into terrain or water continues as a major causal factor in NVG related accidents. It doesn't seem a giant step to conclude that the current warning system is inadequate in preventing such occurrences.

Report, Edward Monhollen                3

I. **DISCUSSION:** My investigation is incomplete and has been hampered by unreasonable response times to Freedom of Information Act (FOIA) requests and the lack of sufficient time to coordinate an examination of the aircraft wreckage. Both of these problems have impacted my investigation and could affect my opinions regarding the cause of this accident.

    1. FOIA Response Times: On 4 February 2002, my office submitted an FOIA request to the U.S. Navy Safety Center for the releasable portions of the Mishap Investigation Report (MIR). We have yet to receive the report and subsequent inquiries have generated the response that they are running approximately one year behind in responding to FOIA requests at the Navy Safety Center. This report is significant in that it normally is much more detailed in damage description and contains more photographic evidence, especially with respect to the aircraft's major components, than the separately written JAGMAN report. The absence of this report becomes more significant when the aircraft wreckage is not reasonably available for examination, particularly with respect to known mechanical deficiencies that have caused previous aircraft accidents (see paragraph I.2, below). Another outstanding FOIA request has prevented me from confirming known NVG related cause factors pertinent to this case.

    2. Wreckage Examination: I have yet to examine the wreckage of this aircraft. This has recently taken on added significance both because I have not seen the MIR and I have become aware of a mechanical deficiency that has resulted in 3 other H-53E accidents. The deficiency involves the duplex bearing assembly in the helicopter's swashplate. This bearing has failed at least 3 times in the past and went completely unnoticed in one accident by both government and Sikorsky investigators until 1 year after the fatal crash of a CH-53E at the Sikorsky plant in May 96. The latest of these failures occurred off the coast of Corpus Christi, TX in August 00. The damage description in the JAGMAN report, including photographs, with respect to the main rotor system and swashplate assembly, is insufficient to allow me to rule out duplex bearing failure as a cause of this accident. In fact, some consistencies with respect to rates of descent and impact angle tend to strengthen my suspicions.

Until I can conclusively rule out duplex bearing failure as causative in this accident, I can offer no further opinions in this accident. However, in the course of ongoing discovery in this matter, should additional substantive information be gained, the above conclusions or their bases may be supplemented, amended, or abandoned depending on the nature of the discovery.

J. **EXHIBITS:** I expect to use the following exhibits at trial:

    1. Various photos and diagrams.
    2. Aircraft models and/or computer simulations.

Report, Edward Monhollen                4

April 1, 2002
Respectfully submitted,

**EDWARD MONHOLLEN & ASSOCIATES**
Edward Monhollen
President

Enclosures





# Edward Monhollen & Associates

### Consultants in Aviation Safety

## EDWARD L. MONHOLLEN
## AIRCRAFT ACCIDENT RECONTRUCTION

Mr. Monhollen is an aircraft accident reconstruction expert and president of Edward Monhollen & Associates (EMA), an aviation safety consulting firm. EMA is a multi-faceted company that provides a wide range of services to legal firms, insurance companies, government agencies, manufacturers, and trade organizations. These services include accident reconstruction, 3D animation, trial exhibit construction, and audio/visual services. EMA capabilities are supplemented by other respected facilities that provide technical support in disciplines such as metallurgical, materials, and mechanical engineering services. Projects ranging from the simplest aviation accident to complex investigations involving commercial airliners or hundreds of accidents with similar causes are undertaken.

Mr. Monhollen was a Senior Airworthiness Engineer with Sikorsky Aircraft Division of United Technologies Corporation for 5 years before founding EMA in 1993. His primary duties involved the worldwide investigation of accidents involving Sikorsky helicopters, participation in the Products Safety Board, management of in-house engineering investigations, and safety audits of Sikorsky facilities. These experiences provided Mr. Monhollen a broad understanding of the aircraft manufacturing process, an understanding of the responsibilities of a government contractor, and an in-depth knowledge of Sikorsky Helicopters. He was involved with investigations of electromagnetic interference (EMI) affects on aircraft systems, transmissions and drive components, composite materials, engines, component non-volatile memory, and cockpit voice recorder and flight data recorder analysis. Each major investigation entailed a review of the operators' maintenance forms, records, and procedures, aircrew training, standardization, crew selection, and qualification. Mr. Monhollen also participated in aircraft accident investigations involving products manufactured by Pratt & Whitney and Hamilton Standard, both divisions on United Technologies Corporation

Mr. Monhollen has over 30 years experience in aviation safety, beginning with his designation as a Army Aviator in 1968. His military career spanned 20 years, culminating with his retirement as a Major in 1987. He is a highly decorated veteran of Vietnam having flown over 900 hours of combat time in helicopters. His combat tour

13438 Bandera Rd, Suite 105A • Helotes, TX 78023 (210) 695 - 5810 Fax: (210) 695 - 5811
www.emasafety.com

was cut short when he was involved in the crash of a UH-1B helicopter gunship.
He spent one year recovering from the injuries sustained in the crash. This was followed
by his assignment as an instructor pilot at the Army's Primary Helicopter School,
attendance at the Army Safety Officer's Course, completion of his Bachelor of Science
degree, and ultimately his assignment as a Board President, investigating accidents for
the Department of the Army.  Upon his retirement, he held the following ratings:
Commercial, Multi-engine, Airplane, Instrument and Commercial, Rotorcraft, CFII with
over 3000 hours of total flight time.

Mr. Monhollen has investigated over 500 aviation accidents and has qualified in court as
an expert in aircraft accident reconstruction and aviation maintenance management.  He
has investigated accidents ranging from the R-22 to the MD-82 and, most recently, the
A-300.  His participation as a reconstruction expert for the government in a recent case
was instrumental in their winning a settlement of over 60 million dollars.  He continues to
carry an average of 12 to 17 cases at any given time.

March 2002

# EDWARD L. MONHOLLEN

**Areas of Expertise:**

Aircraft accident reconstruction, fixed and rotary wing.
Aircraft fire and explosion investigation.
Aircraft handling qualities.
Night vision flight techniques.
Aircraft maintenance management.
Human factors investigation.
Risk assessment and management.
Turbine engine investigation.
Cockpit resource management.

**Education:**

International Center for Safety Education, 1990
    Aircraft fire and explosion investigation
Sikorsky Aircraft / Flight Safety International, 1988
    Pilot Familiarization, S-76B, UH-60A/L, CH-53E, SH-60B
Transportation Safety Institute, 1984
    Rotorcraft Safety and Investigation
Transportation Safety Institute, 1983
    FAA Basic and Advanced Accident Investigation
Embry-Riddle Aeronautical University, 1975
    Bachelor of Science, Professional Aeronautics / Aviation Safety
    Management
University of Southern California, 1971
    U.S. Army Safety Officer's Course, Aircraft and Vehicle Accident
    Investigation Certificate.

**Positions Held:**

Edward Monhollen & Associates, San Antonio, Texas
    President and Accident Recontructionist, 1993 – Present

Sikorsky Aircraft Division, Stratford, Connecticut
    Senior Airworthiness Engineer, 1987 – 1993

U.S. Army, Fort Rucker, Alabama
    Major, Master Army Aviator, Accident Investigator, 1967 –1987

**Professional Affiliations:**

International Society of Air Safety Investigators
    Member Number – M03023
Transportation Safety Institute
    Former Associate Staff
Army Aviation Association of America
    Former Alamo Chapter President
Vietnam Helicopter Pilots Association
    Member

**Flight Experience:**

Helicopter and Airplane Multi-engine Land, Instrument, Instructor
    Total time 3000+ hours.

| | |
|---|---|
| AS 350 D | T-41 |
| AH-1 | T-42 |
| B 204 / 205 | B-200/300 |
| B 206 | Schweizer 269 / 300 |
| CH-47D | MD-500 |
| CH-53E | UH-60 A/L |
| SH-60B | S-76 A/B |

**Awards and Decorations:**

Meritorious Service Medal (1 Oak Leak Cluster)
Air Medal with "V" device for Valor (16 Oak Leaf Clusters)
Vietnam Service Medal with 3 Bronze Stars
Republic of Vietnam Cross of Gallantry with Palm
Master Army Aviator Badge

**Major Investigations:**

Case Involvement available on request.

March 2002

# Case Involvement

### Edward Monhollen
### 1993 - Present

| | |
|---|---|
| 1993 | Carberry, et al. v. Aerospatiale Helicopter Corporation<br>U. S. District Court, Washington.    AS-350D, Defense, |
| 1993 | Eagle Air v. Aerospatiale Helicopter Corporation.<br>U. S. District Court, Washington.  AS-350D, Defense |
| 1993 | House v. United Technologies Corporation<br>U. S. District Court of Southern California.  SH-60B, Defense.<br>Gray, Cary, Frye, & Friedenrich.. |
| 1994 | Slaven, et al.  v. United Technologies Corporation<br>U. S. District Court, Arizona.  UH-60A.  Defense.<br>Gust, Rosenfeld, & Henderson. |
| 1996 | Cary, et al.  v. Sikorsky Aircraft Division.(UTC)<br>U. S. District Court, Kentucky.  S-76A, Defense,<br>Neal & Harwell. |
| 1996 | Moore  v.  Bell Helicopter Company<br>U. S. District Court, Louisana..  B-206B.  Plaintiff.<br>Lambert & Nelson. |
| 1996 | Tower  v.  The United States<br>U. S. District Court of Southern California.  SH-60B.  Defense.<br>USDOJ, Robert A.K. Doehl. |
| 1996 | Johnson, et al.  v.  Bell Helicopter Company.<br>U. S. District Court, Louisana.. B-206A.  Plaintiff.<br>Lambert & Nelson. |
| 1996 | Federico  v.  The United States<br>U. S. District Court of Southern California. Champion 7EC.  Defense.<br>USDOJ, Mr. Robert A.K. Doehl |
| 1996 | California Helicopter v. The City of San Antonio.<br>U. S. District Court of Southern Texas.  S-58.  Defense |
| 1996 | Through Transport v. Boeing<br>U. S District Court of Maryland.  CH-47D.  Defense.<br>Gardere & Wynne. |

1997  Rollins v The United States, et. al.
     U. S. District Court of Texas, Eastern District. Defense
     USDOJ

1997  Rudd v. The United States
     U. S. District Court of Alabama, Northern District. Defense
     USDOJ

1997  Deloach v. The United States
     U. S. District Court of Georgia. UH-60A. Defense.
     USDOJ

1997  Burnett v. Marathon Oil Company
     U.S. District Court of Louisiana. B-206B. Plaintiff.
     Lambert & Nelson

1999  Moss v. Bell Helicopter Textron et al.
     District Court of Galveston County Texas. B-206B. Plaintiff.
     Provost & Umphrey.

1999  Scott v. Altair, et al.
     District Court of Tarrant County Texas. PA 28-235. Plaintiff.
     Slack & Davis.

1999  Tiller v. Piper et al.
     District Court of Jefferson County Texas. PA60-602P. Plaintiff.
     Slack & Davis.

2000  USA ex rel. Brett Roby v. The Boeing Company.
     Southern District Court of Ohio. CH-47D (7 Accidents). Plaintiff.
     USDOJ. Frauds Division. Mr. Dennis Phillips

2000  Mclerran v. American Airlines.
     Circuit Court of Pulaski County Arkansas. MD-82. Plaintiff.
     Slack & Davis.

2001  William T. Miles, Jr. v. The United States of America. Beechcraft Queen
     Air. Defendant.. US District Court for the Southern District of Florida.
     USDOJ. Mr. Justin Chretien

2002  USA ex rel. Daniel Jordan v Northrop Grumman Corporation.
     United States District Court, Central District of California. BQM-74E
     Target Drone. Plaintiff.
     USDOJ. Frauds Division. Mr. Dennis Phillips.

# DATA CONSIDERED

1  JAGMAN Report, dated 16 Jun 99, of Aircraft Mishap, BUNO 162007, occurring on 19 Apr 99.
2  Deposition of Major Matthew J. Paul.
3. Deposition of LtCol David Samples.
4. Deposition of Mr. Glen L. Nowak

```
*******************************
***   MULTI TX/RX REPORT   ***
*******************************

TX/RX NO            0043
INCOMPLETE TX/RX
TRANSACTION OK      (1)  *270#201165#12149535822#
                    (2)  12103492760#
                    (3)  5482549#
                    (4)  5424084#
ERROR
```

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:     4/1/02

TO:      Mr. Robert F. Ruckman        FAX#:  (214) 953-5822
TO:      Mr. Ron A. Sprague           FAX#:  (210) 349-2760
TO:      Ms. Nancy Masso              FAX #:  548-2549
TO:      Mr. Joe Valle                FAX #:  542-4084

FROM:    Ray R. Marchan

RE:      Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE):

# WATTS & HEARD, L.L.P.

1926 E. Elizabeth
Brownsville, Texas 78520
Tel: (956) 544-0500
Fax: (956) 541-0255

## TELECOPY TRANSMITTAL COVER SHEET

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the document.

DATE:     4/1/02

TO:     Mr. Robert F. Ruckman     FAX#:  (214) 953-5822
TO:     Mr. Ron A. Sprague     FAX#:  (210) 349-2760
TO:     Ms. Nancy Masso     FAX #:  548-2549
TO:     Mr. Joe Valle     FAX #:  542-4084

FROM:   Ray R. Marchan

RE:     Saldana vs. ITT, et al

NUMBER OF PAGES (INCLUDING COVER PAGE):

COMMENTS:

If there are any problems, please call (956) 544-0500 and ask for Letty.



ATTORNEYS & COUNSELORS
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000, Fax (214) 953-5822
www.jw.com

**JACKSON WALKER L.L.P.**

Robert F. Ruckman
(214) 953-6024
rruckman@jw.com

July 1, 2002

<u>**VIA FACSIMILE**</u>
Ray R. Marchan
WATTS & HEARD, P.C.
1926 E. Elizabeth
Brownsville, Texas 78520

Re:  Civil Action No. B-00-176; *Krista Saldana, et al. v. ITT Industries, Inc., et al.,* in the United States District Court, Southern District of Texas, Brownsville Division

Dear Ray:

In accordance with our telephone conversation this morning, this will confirm our agreement regarding the following:

1.  Sikorsky will agree to withdraw its motion to exclude Ed Monhollen based upon your representation that Mr. Monhollen will no longer serve as either a testifying or consulting expert for Plaintiff in any capacity. In that regard, you have confirmed that no materials prepared by Mr. Monhollen, including his expert report, will be reviewed or utilized by a new expert.

2.  We have agreed to a 60 day extension of time for which Plaintiff may designate a new expert on government contractor defense and an additional 60 days in which Plaintiff must respond to Sikorsky's Motion for Summary Judgment on the government contractor defense issue. Prior to Plaintiff's deadline for responding to Sikorsky's summary judgment motion, Defendant will produce Chris Lowenstein for his deposition at its facility in Stratford, Connecticut or a location nearby and Plaintiff may have her new expert attend such deposition.

3.  Sikorsky shall have 30 days after Plaintiff's new designation to designate any additional experts on the government contractor issue.

4.  Sikorsky will have 30 days to reply to Plaintiff's response to Sikorsky's summary judgment motion and Plaintiff will make available its expert for a deposition prior to that date. Sikorsky will also have the opportunity to have a representative attend such deposition.

Austin
Dallas
Fort Worth
Houston
Richardson
San Angelo
San Antonio

Member of GLOBALAW™

Ray R. Marchan
July 1, 2002
Page 2

5.      Because of the extensions of the deadlines for the government contractor defense, the parties agree to request that the remainder of the deadlines, including the trial date, be pushed back to accommodate the changes to the schedule.

6.      Finally, Sikorsky reserves the right to seek to disqualify or exclude any new expert designated by Plaintiff should Sikorsky believe that there are reasonable grounds for doing so.

If this conforms with our understanding today, please sign a copy of this letter and return it to me.

Very truly yours,

Robert F. Ruckman

RFR/kjw

Agreed:

Ray R. Marchan
Counsel for Plaintiff

cc:    **VIA FACSIMILE**
Ron A. Sprague
GENDRY & SPRAGUE, P.C.
645 Lockhill Selma
San Antonio, TX 78216-5057

**VIA FACSIMILE**
Joe Valle
Attorney at Law
1120 East Tenth Street
Brownsville, Texas 78520