IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 0 6 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| Krista Saldana, individually and as representative of the estate of David Saldana and as next friend of Jagger Saldana, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. B-00-176 |
| ITT Industries, et al., | § § § | |
| Defendants. | § | |

ORDER

BE IT REMEMBERED, that on March 5, 2003, the Court **GRANTED** Defendant Sikorsky Aircraft Corporation's Motion for Summary [Dkt. No. 44].

I.   **Background**

This case arises out of an incident involving a United States Marine Corps helicopter which crashed into the Pacific Ocean near Okinawa, Japan, in April 1999. The crash occurred during a training exercise in which the pilots of two Marine CH-53E helicopters were using Aviator's Night Vision Imaging System Night Vision Goggles ("ANVIS"). The training mission simulated the recovery of a downed pilot. After executing the main portion of the mission, the helicopters were returning to base on a route parallel to the coastline when the two pilots determined that weather conditions on the route they intended to use for their return to base had deteriorated significantly. The pilots decided to use an alternate route to return to base. To make the course correction the following helicopter initiated a turn and the lead helicopter then followed. The following helicopter, however, turned away from rather than toward the coastline, thus turning away from a high ambient light source, the coast line and lights onshore, and toward a low ambient light source, a large body of water with cloud cover and no visible horizon. The following helicopter which initiated the turn crashed into the Pacific

Ocean. Everyone onboard, including Corporal David Saldana, died in the crash. The independent accident investigator concluded that the cause of the accident was aircrew error resulting in controlled flight into the water.

Plaintiffs, Krista Saldana, individually, and as representative of the estate of David Saldana and as next friend of Jagger Saldana, alleged strict liability, negligence, negligence per se, *res ipsa loquiter*, breach of express and implied warranties, failure to warn, defective design, and gross negligence. Defendant Sikorsky Aircraft Corporation ("Sikorsky") has moved for summary judgment based on the government contractor defense.[1] Plaintiffs have not responded to Defendant Sikorsky's motion for summary judgment.[2]

## II.  Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the Court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. *See Anderson v. Liberty*

---

[1] Defendant ITT Industries separately moved for summary judgment based on the government contractor defense, and this Court granted that motion, severed Defendant ITT from this case, and entered final judgment in ITT's favor.

[2] Southern District of Texas Local Rule 7.4 states: "Failure to respond will be taken as a representation of no opposition." In the interest of justice, however, the Court analyzes the law and facts presented by Defendant Sikorsky in its motion for summary judgment.

*Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. The Government Contractor Defense

Defendant Sikorsky, the manufacturer of the CH-53E helicopter that crashed, has asserted the government contractor defense. "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).[3] The government contractor defense is a defense to state causes of action based on design defects such as those pressed by the Plaintiffs. *See, e.g., Smith v. Xerox Corp.*, 866 F.2d 135, 136 (5th Cir. 1989) (applying the government contractor defense to, *inter alia*, negligence, strict liability, failure to warn, and breach of warranty causes of action).

### A. The United States approved reasonably precise specifications for the CH-53E

In the Fourth Circuit's *Boyle* opinion, 792 F.2d 413 (4th Cir. 1986), *vacated and remanded*, 487 U.S. 500 (1988), the Court found that a contractor had adequately demonstrated that the United States Navy had approved reasonably precise specifications for a helicopter escape hatch where Sikorsky, the helicopter manufacturer, and the United States Navy worked together to prepare detailed specifications; one of Sikorsky's program engineering managers for the helicopter "described in some detail the back- and-forth discussions" between Sikorsky and the United States Navy; Sikorsky built a mock-up of the helicopter cockpit, including the collective stick and the emergency escape hatch; and the United States Navy reviewed the mock-up and approved the design. *See Boyle*, 792 F.2d at 414-15.

---

[3] The Supreme Court and the Fourth Circuit decisions in *Boyle* are directly on point because that case concerned the crash of a CH-53D helicopter, the predecessor design to the helicopter involved in this case, and Defendant Sikorsky's assertion of the government contractor defense.

Defendant Sikorsky has produced exactly the sort of evidence that satisfies the first prong of the government contractor defense. For example, the development of the CH-53E prototypes involved design, fabrication, and testing, all of which was closely monitored by United States Navy engineering specialists who were in residence in the Navy Representatives Office ("NAVPRO") at Sikorsky's plant and by frequent program reviews attended by both United States Navy and Sikorsky personnel. (Ex. C at 2, 4-5; Ex. B at 3, 9).[4] The United States Navy required Sikorsky to provide full scale aircraft mock-ups in accordance with military standards. (Ex. B at 8). Sikorsky completed the mock-ups, and the United States Navy performed extensive inspections and testing before approving the design. (Ex. B at 8). Once approved by the United States Navy, Sikorsky was not permitted to unilaterally change any aspect of the design. (Ex. B at 8; Ex. C at 3).

It is clear from Defendant Sikorsky's uncontroverted summary judgment evidence that the United States approved reasonably precise specifications for the CH-53E.

**B.   The CH-53E conformed to the specifications approved by the United States**

Defendant Sikorsky has also satisfied its burden of proof on the second element of the government contractor defense, that the CH-53E conformed to the specifications approved by the United States Navy. In *Boyle*, on the question of whether the helicopter at issue had conformed to its specifications, the Fourth Circuit noted that after Sikorsky built the helicopter, the United States Navy accepted it as fully complying with specifications and had thirteen years of experience with it by the time of Boyle's crash. The Court held that Sikorsky had satisfied the second prong of the military contractor defense. See *Boyle*, 792 F.2d at 414-15. The same evidence that supported the first prong of the *Boyle* test also supports the second prong. See *Kleeman v. McDonnell Douglas Corp.*, 890 F. 2d 698, 701 (4th Cir. 1989) ("Indeed,

---

[4]   All references are to the exhibits attached to Defendant Sikorsky's motion for summary judgment.

active government oversight is relevant to all three elements of defendant's burden.").

In addition to the summary judgment evidence supporting the first prong, the summary judgment record demonstrates that the United States Navy, through its NAVPRO office on sight at the Sikorsky plant, tested every CH-53E prior to delivery and upon delivery issued a Material Inspection Receiving Report known as the DD-250 certifying that all contract requirements were satisfied. (Ex. B at 9; Ex. C at 5). The United States Navy issued a DD-250 for the CH-53E helicopter at issue in this case. (Ex. G). The signed DD-250 for the particular CH-53E at issue in this case states: "Acceptance of listed items has been made by me or under my supervision and they conform to contract, except as noted herein or on supporting documents." (Ex. G). There were no exceptions related to any of the design defects Plaintiffs alleged in their complaint. Plaintiffs have failed to present any evidence that the government's acceptance of the CH-53E helicopter at issue in this case was not correct. Absent such proof, the Court finds the DD-250 conclusively established that the CH-53E helicopter at issue conformed to the contract specifications. *See Hendrix v. Bell Helicopter Textron, Inc.*, 634 F. Supp. 1551, 1557 (N.D. Tex. 1986) (finding the DD-250 conclusive evidence that the helicopter at issue conformed to government specifications). The second *Boyle* prong is therefore satisfied.

    **C.**    **The supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States**

The third prong requires Defendant Sikorsky to have warned the United States about the dangers in the use of the CH-53E that were known to Sikorsky but not to the United States. There is no evidence in the summary judgment record that Defendant Sikorsky had knowledge of a design defect of which the United States did not already have knowledge. To the contrary, the summary judgment evidence demonstrates that the United States Navy and Marine Corps knew of the inherent dangers of flying any helicopter with ANVIS from high ambient light conditions to low ambient light conditions and warned their pilots of those dangers in the ANVIS Operator's Manual. (Ex. H at a, 2b). The United States

Navy and Marine Corps knowledge is further confirmed by Major Mathew J. Paul, the pilot of the second CH-53E on the training mission who is also an ANVIS instructor, who testified that the Marine Aviation Weapons and Tactics Squadron manual provides training on transitioning from high to low ambient light conditions when using the ANVIS. (Ex. J at 35:7-17 and 15:20-16:4). Moreover, as early as 1993, and possible before then, the United States Navy and Marine Corps knew that helicopters flown by pilots using ANVIS had difficulty seeing the low altitude warning light on the radar altimeter and that an aural warning was needed. (Ex. D at 2-4). The third *Boyle* prong is therefore satisfied.

**IV. Conclusion**

Defendant Sikorsky has met its burden of showing that no issue of material fact remains which would warrant a trial against it. Summary Judgment for Defendant Sikorsky is therefore **GRANTED**.

Moreover, the Motion to Enter Parties' Agreement [Dkt. No 47] and Agreed Motion to Enter Parties' Agreements and Request for Entry of Revised Scheduling Order [Dkt. No. 48] are **GRANTED IN PART**; thus, Defendant Sikorsky Aircraft Corporation's Motion to Exclude Plaintiff's and Intervenors' Expert Witness Edward L. Monhollen, Jr. [Dkt. No. 46] has been **WITHDRAWN** pursuant to the parties' agreement and is no longer pending.

DONE at Brownsville, Texas, this 5th day of March 2003.

Hilda G. Tagle
United States District Judge